Richard B. TANNER, Jr., Appellant,

v.

Benjamin KARNAVAS, Gary Karnavas and Pam Karnavas, Appellees.

No. 05–01–01708–CV.

Court of Appeals of Texas, Dallas.

Aug. 13, 2002.

Rehearing Overruled Sept. 16, 2002.

 

 

 
 
 

 
 
 
 

 
 
 
 
 

 
 
 
 

 
 
 
 

 
 

 

 
 
 

Richard B. Tanner, Richardson, for appellant.

Kathryn Elaine Eriksen, Paul Van Ness & Associates, Dallas, for appellee.

Before Justices LAGARDE, FITZGERALD, and RICHTER.

## OPINION

Opinion By Justice LAGARDE.

Richard B. Tanner, Jr. appeals a take-nothing judgment rendered on the jury's verdict that Benjamin Karnavas was not negligent in connection with an automobile collision between Tanner and Karnavas. In six points of error, Tanner contends there was no evidence to support the instruction on unavoidable accident, the jury's finding was against the great weight and "sufficiency" of the evidence, the trial court committed several evidentiary errors, and the grant of partial summary judgment in favor of Gary and Pam Karnavas was error. For reasons that follow, we dismiss appellant's fifth point of error for lack of jurisdiction and otherwise affirm the trial court's judgment.

## Background

Karnavas was fifteen years old at the time of the incident. Tanner was a friend of the family and dated Karnavas's older sister, Andrea, who was eighteen. Karnavas and Andrea drove to Tanner's house on the day of the accident. Later, Karnavas, Andrea, and Tanner decided to go to Karnavas's house. Tanner took his car, and Andrea wanted to ride with him, leaving Karnavas to drive by himself. Karnavas had a hardship driver's license permitting him to drive with another licensed driver eighteen or older, unless he was driving to work, school, or the doctor. It is undisputed that Karnavas was outside the restrictions of his license when he drove by himself on the day of the accident.

It was a rainy day with intermittent showers. The streets in the neighborhood were wet. Karnavas followed Tanner and Andrea as they drove to the Karnavas house. As they approached an intersection, Tanner stopped at a stop sign. Karnavas applied his brakes in the same manner and at the same distance as he had earlier done that day on the wet streets. His truck immediately started to skid. Karnavas applied more pressure on the brakes, but his vehicle did not stop and

"bumped" into Tanner's car. Tanner did not get out of his car, but left the intersection and drove on to Karnavas's house. When they arrived at the house, Karnavas asked if everyone was okay; Tanner and Andrea said they were fine. They looked at the rear of Tanner's car and found no damage. There was slight damage to the front bumper and grill of Karnavas's truck. Tanner testified that Karnavas was not driving at an excessive speed.

Karnavas described the impact as a "small jolt." He was wearing his seatbelt, but it did not tighten at the impact. Andrea also testified that her seatbelt did not tighten at the impact. No one got out of the cars at the scene, and no one asked for medical attention at the scene or later at the Karnavas house. Andrea did not have any bruises from her seatbelt after the accident.

Tanner was later diagnosed with a herniated disc in his lower back and filed this suit. His expert testified that the accident was a factor contributing to an injury to Tanner's back. He could not rule out other causes of herniation such as coughing, laughing, sneezing, or stepping off a curb. Karnavas produced an expert in biomechanics who testified about the forces generated in low-speed accidents and the effects of those forces on the human anatomy. This expert concluded the forces generated in this low-speed car accident were not sufficient to cause a herniated disc in Tanner's lower back.

Tanner sued Karnavas for negligence in causing the accident and the injury to his back and sued Karnavas's parents, Gary and Pam, for negligently entrusting the vehicle to Karnavas. The trial court granted a partial summary judgment in favor of Gary and Pam Karnavas and severed all causes of action against them, assigning a new cause number to the severed case. The original case proceeded to

trial on Tanner's negligence claim against Karnavas, and the jury failed to find Karnavas negligent. The trial court entered a take-nothing judgment on the jury's verdict.

## Discussion

### Unavoidable Accident Instruction

■　We review complaints of error in the jury charge for an abuse of discretion. The trial court has considerable discretion in submitting explanatory instructions and definitions to assist the jury in reaching a verdict. *See* Tex.R. Civ. P. 277; *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). An instruction is proper if it finds support in *any* evidence of probative value and if it might be of some assistance to the jury in answering the questions submitted. *See La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex.1998) (per curiam).

■　Tanner objected that there was no evidence to support the unavoidable accident instruction. An unavoidable accident is "an event not proximately caused by the negligence of any party to it." *Reinhart v. Young*, 906 S.W.2d 471, 472 (Tex.1995) (quoting *Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 370, 250 S.W.2d 379, 385 (1952)). The instruction is proper only when there is evidence that the event was proximately caused by a nonhuman condition and not by the negligence of any party to the event. *See Hill v. Winn Dixie Tex., Inc.*, 849 S.W.2d 802, 803 (Tex.1992). The instruction is most often used to inquire about the causal effect of some physical condition or circumstance such as fog, snow, sleet, wet or slick pavement, or obstruction of view. *See Reinhart*, 906 S.W.2d at 472. Although the Texas Supreme Court has expressed some reservations in the use of this instruction, it has not held the instruction

improper in cases involving environmental conditions such as wet or slick pavement. *See La.-Pac.,* 976 S.W.2d at 676 (sudden emergency instruction was not error where evidence showed it was raining and streets were wet); *cf. Reinhart,* 906 S.W.2d at 473–74 (where overpass allegedly obstructed view of defendant and weather was clear, any error in giving instruction was harmless because case was not close and sudden emergency instruction was given without objection); *Hill,* 849 S.W.2d at 803 (instruction improper where plaintiff slipped and fell on cookie, but error was harmless). *See also Friday v. Spears,* 975 S.W.2d 699, 702 (Tex.App.-Texarkana 1998, no pet.) (unavoidable accident instruction proper in rear end collision case where both parties testified that roads were wet at time of collision).

It is undisputed that it had rained the day of the accident and the roads were wet where and when the accident occurred. Karnavas had driven his vehicle on the wet streets earlier that day without incident. Karnavas was not driving at an excessive speed, began braking at a normal distance, and applied normal pressure to the brakes. The truck started to skid. Tanner heard tires screeching on the pavement just before the impact. This is some evidence that the accident was proximately caused by a nonhuman condition, the wet streets, and not by the negligence of Karnavas. The trial court did not err in submitting the instruction on unavoidable accident.

■ Tanner argues the instruction was somehow improper because Karnavas knew the roads were wet. This evidence does not show that the wet roads were not the proximate cause of the accident. The evidence showed Karnavas had driven on the wet streets that day with no problem and that he applied his brakes in the same manner and at the same distance as he had earlier in the day. The jury could have concluded Karnavas took reasonable actions knowing the roads were wet and, despite his care, the wet streets proximately caused the accident. Thus, "foreseeability of the road conditions did not negate the propriety of the unavoidable accident instruction." *Friday,* 975 S.W.2d at 702. We overrule Tanner's first point of error.

### Evidentiary Rulings

■ In points of error two, three, and four, Tanner complains of evidentiary rulings of the trial court in admitting and excluding certain evidence. The trial court has broad discretion in the admission or exclusion of evidence. *Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001). A party complaining of error in the admission or exclusion of evidence need not show that but for the error a different judgment would necessarily result, but must show the error probably resulted in an improper judgment. *See* Tex.R.App. P. 44.1(a); *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753–54 (Tex.1995); *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992). We review the entire record to determine if the error was harmful. *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex.2000). A successful challenge to a trial court's evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See Interstate Northborough,* 66 S.W.3d at 220.

■ Tanner complains the trial court allowed Karnavas's expert to testify that within scientific probability, it was not likely Tanner suffered a herniated disc in his lower back as a result of this low-speed, rear-end collision. Tanner argues that the expert was not qualified to give this opinion because he was not a medical doctor. The expert was a Ph.D. in

biomedical engineering, but not an M.D. Assuming, without deciding, it was error to allow the testimony, the error was harmless because the evidence was only relevant to the damage question, which the jury never answered. The damage question was conditioned on a finding that Karnavas's negligence proximately caused the occurrence. Because the jury answered "No" to those issues, it never considered the evidence of damages. Therefore, the error, if any, did not cause the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a).

■ Tanner argues that because injury is an element of negligence, the evidence was harmful. We disagree. There are two distinct aspects of causation in a personal injury case. A plaintiff typically alleges a defendant's negligence proximately caused an event such as an automobile accident, and this event caused injury to the plaintiff. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984). "Thus, at trial the plaintiff must establish two causal nexuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries." *Id.* The nexus between the defendant's conduct and the event establishes the liability part of a plaintiff's case. *Id.* at 732. In a negligence case such as this, liability is shown by proving the defendant's negligence was a proximate cause of the event. *Id.* Question one submitted the liability portion of Tanner's claim in this manner.[1] Question two was conditioned on an affirmative answer to question one and inquired into the damage portion of

the negligence claim and the second aspect of causation.[2] "Whether the event sued upon caused the injuries to the plaintiff is another matter entirely. The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action." *Id.*

Tanner did not object to the conditioning of the questions in the charge. Admission of the expert's opinion could not have been error because the opinion went to the second aspect of causation, whether the event caused injury to the plaintiff, not whether the defendant was negligent. The jury failed to find that Karnavas's negligence, if any, proximately caused the event. As a result, any opinion that the event could not have injured Tanner, even if erroneous, was harmless.

■ Tanner next argues he was prevented from obtaining a rebuttal witness because the trial court had initially excluded this portion of the expert's testimony before trial, but then allowed the evidence when offered at trial. Tanner failed to preserve error on this point by not requesting a continuance or asking the trial court to allow him to bring in another expert. *See* TEX.R.APP. P. 33.1(a). Tanner could not have been surprised by the need for an expert to prove the accident caused the injury to his back. He was required to prove this fact as part of his case in chief and attempted to do so with his own expert. We overrule Tanner's second point of error.

■ Tanner also complains of the exclusion of Karnavas's application for a

---

1. "Question No. 1. Did the negligence, if any, of BENJAMIN KARNAVAS proximately cause the occurrence in question?" The jury answered "No."

2. "Question No. 2. What sum of money, if paid now in cash, would fairly and reasonably compensate RICHARD B. TANNER, JR. for his injuries, if any, that resulted from the occurrence in question?" The jury did not answer this question.

hardship license. Tanner claims the sworn application was false and that this evidence was relevant to Karnavas's credibility. We fail to see how the application or evidence that it was false could be used to impeach Karnavas's credibility because rule 608 prohibits the use of specific instances of conduct to attack the credibility of a witness. *See* TEX.R. EVID. 608(b). Further, any error would be harmless. The jury was repeatedly told Karnavas had a hardship license and was driving beyond the scope of the license at the time of the accident. Thus, exclusion of the application did not cause an improper judgment. *See* TEX.R.APP. P. 44.1(a).

■ The final evidentiary challenge regards the admission of evidence of Tanner's other accidents. Tanner was involved in two other minor accidents or near accidents after the one with Karnavas. The evidence of these accidents was relevant to the issue of damages. Because the jury did not reach the damage issue, any error in admitting the extraneous accidents evidence was harmless. *See* TEX. R.APP. P. 44.1(a). We overrule points three and four.

### Summary Judgment

Before we continue, we must address our jurisdiction to consider Tanner's fifth point in which he complains of the grant of partial summary judgment on his negligent entrustment claims against Gary and Pam Karnavas.[3] However, there is an order severing all causes of action against Gary and Pam Karnavas into a separate action assigned cause number CC–98–10394–EB. The clerk of the court was ordered to copy and file several documents and orders from the original action into the severed action, including the com-

plained-of summary judgment order. We have no record of an appeal from severed cause number CC–98–10394–EB. Tanner did object to the partial summary judgment in his motion for new trial filed in the original action and brings a point of error about it in his brief. The motion for new trial was filed on August 31, 2001, thirty days after the judgment on the jury verdict in the original action, but fifty-two days after the order of severance. Tanner's notice of appeal bears the original cause number. It mentions the motion for new trial, but does not clearly indicate he is appealing from the partial summary judgment in the severed action.

■ As a rule, severance of an interlocutory judgment into a separate action makes it final, unless the order of severance indicates further proceedings are to be had in the severed action. *See Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 63 S.W.3d 795, 795 (Tex.2001) (per curiam) (severed action remained interlocutory where severance order stated action would "proceed as such to final judgment or other disposition"); *Martinez v. Humble Sand & Gravel, Inc.*, 875 S.W.2d 311, 313–14 (Tex.1994) (per curiam) (severance order permitting additional defendants to be added to severed action was interlocutory).

■ The appellate timetable runs from the signing date of whatever order makes the severed judgment final and appealable. *See Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex.1995) (per curiam); *Martinez*, 875 S.W.2d at 313. An order of severance is effective when signed even if the clerk fails to create a separate file with a different cause number. *See*

**3.** *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993) (subject matter jurisdiction may be raised for the first time on appeal either by the parties or by the court).

*McRoberts v. Ryals,* 863 S.W.2d 450, 452–53 (Tex.1993).

The partial summary judgment signed December 28, 2000 disposed of all claims by Tanner against Gary and Pam Karnavas. It remained interlocutory because of the remaining claims against Benjamin Karnavas. On July 10, 2001, the trial court signed an order severing all causes of action against Gary and Pam into a new cause number. The order did not indicate that further proceedings were to be had in the severed action. *See Diversified,* 63 S.W.3d at 795; *Martinez,* 875 S.W.2d at 313. Neither the partial summary judgment nor the severance order contains express "finality" language, but the order of severance finally disposed of the remaining issues and parties and made the partial summary judgment final.[4] *See Farmer,* 907 S.W.2d at 496; *Martinez,* 875 S.W.2d at 313. Thus, the appellate timetable for appealing the partial summary judgment ran from the date of the order of severance. *Farmer,* 907 S.W.2d at 496. No notice of appeal or motion for new trial was filed within thirty days of this order.

The supreme court has "rejected constructions of severances, . . . that would have the effect of depriving or deceiving a party out of the right to appeal." *Martinez,* 875 S.W.2d at 313. Thus, the court has held that a motion for new trial or attempt to invoke appellate jurisdiction timely filed in the wrong cause number will not defeat appellate jurisdiction. *See Blankenship v. Robins,* 878 S.W.2d 138, 138–39 (Tex.1994) (per curiam); *McRoberts,* 863 S.W.2d at 454–55; *City of San Antonio v. Rodriguez,* 828 S.W.2d 417, 418 (Tex.1992) (per curiam); *Mueller v. Saravia,* 826 S.W.2d 608, 609 (Tex.1992) (per curiam). These cases teach that courts of appeal have jurisdiction as long as the appellant makes a bona fide attempt to invoke appellate jurisdiction. *Mueller,* 826 S.W.2d at 609; *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 681 (Tex. App.-Dallas 2000, no pet.) (motion for new trial filed in parent action after severance extended appellate timetables); *Leal v. City of Rosenberg,* 17 S.W.3d 385, 386 (Tex.App.-Amarillo 2000, no pet.) (same).

■ We therefore recognize that filing a *timely* motion for new trial or notice of appeal under the wrong cause number or in the wrong case can evidence a bona fide attempt to invoke appellate jurisdiction. *See Espalin,* 27 S.W.3d at 681; *Leal,* 17 S.W.3d at 386. Here, however, the motion for new trial was not *timely* in relation to the severance order. The partial summary judgment became a final judgment when the trial court severed all causes of action between plaintiff and Gary and Pam Karnavas into a separate action. Tanner had thirty days from the date of the order of severance to perfect an appeal or file a motion for new trial from the then-final partial summary judgment. If he had filed a notice of appeal or motion for new trial within that time period, it would have been a bona fide attempt to invoke appellate jurisdiction even if filed under the wrong cause number. However, Tanner's motion for new trial in the original cause number, which complained in part about the granting of the partial summary judgment, was not filed until August 31, 2001, more than fifty days after the severance order. We cannot conclude that an attempt to invoke appellate jurisdiction that is not timely is "bona fide." For all the

---

4. Alternatively, if the order of severance did not result in a final judgment in the severed action, that action is still pending and is not yet subject to appeal. *See Diversified,* 63 S.W.3d at 795; *Lehmann v. Har–Con Corp.,* 39 S.W.3d 191, 195, 204 (Tex.2001) (with few exceptions, appeal may only be taken from final judgment).

reasons above, we dismiss Tanner's fifth point of error for lack of jurisdiction.

Even if we were to reach this point of error, any error in granting summary judgment on the negligent entrustment claims was harmless in light of the jury's failure to find the driver negligent. Because the driver's negligence is an essential element of a negligent entrustment claim and the jury found no negligence by Karnavas, the partial summary judgment could not have been harmful. *See Schneider v. Esperanza Transmission Co.,* 744 S.W.2d 595, 596 (Tex.1987) (elements of negligent entrustment are: (1) entrustment of vehicle by owner; (2) to unlicensed, incompetent, or reckless driver; (3) that owner knew or should have known to be unlicensed, (4) that driver was negligent on the occasion in question and (5) that driver's negligence proximately caused accident).

### Sufficiency of the Evidence

In his sixth point of error, Tanner challenges the factual sufficiency of the evidence. In reviewing a jury finding, we review all the evidence in the record to determine if the finding is against the great weight and preponderance of the evidence. *See City of Princeton v. Abbott,* 792 S.W.2d 161, 163 (Tex. App.-Dallas 1990, writ denied); *see also Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We examine the entire record to determine whether the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain,* 709 S.W.2d at 176; *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex. 1985). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962).

The substance of Tanner's argument on this point is that "Karnavas failed to stop the vehicle he was driving without striking another vehicle." From this, Tanner argues the jury's verdict was manifestly unjust and clearly wrong. There is ample evidence to support the jury's answer to question one. Tanner himself testified Karnavas did not have any trouble driving on the wet streets before the accident and that "it looked like he was doing just fine." Tanner also testified Karnavas was not using excessive speed. Karnavas testified he did not have trouble stopping the truck on the wet streets earlier in the day and that he started to brake at the same distance as before. He applied the same pressure to the brake as he had earlier that day. He was surprised when the truck skidded and hit Tanner's car. This evidence was undisputed.

We conclude the jury's finding was not against the great weight and preponderance of the evidence in the record. Tanner's sixth point of error is overruled.

The judgment of the trial court is affirmed.