**Edith Elaine RISINGER and Louis Risinger, Appellants,**

v.

**Allen SHUEMAKER and Covington Lumber Company, Inc., Appellees.**

**No. 12–02–00302–CV.**

Court of Appeals of Texas, Tyler.

July 30, 2004.

Rehearing Overruled Sept. 30, 2004.

Gregory D. Smith, for appellants.

James A. Payne Jr., Fairchild, Price, Thomas & Haley, L.L.P., Center, Christopher Burke, Miller & Burke, P.C., Mark C. Jordan, Allen, Stein & Durbin, a Professional Corporation, San Antonio, for appellees.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

SAM GRIFFITH, Justice.

In two issues, Appellants Edith and Louis Risinger ("the Risingers") challenge the trial court's entry of a take-nothing judgment in favor of Appellees Allen Shuemaker ("Shuemaker") and Covington Lumber Company, Inc. ("Covington Lumber"). We affirm.

### BACKGROUND

On September 7, 1999, Edith Risinger was driving northbound on Teneha Street in Center, Texas, and stopped her car in order to turn left into the Easy Money Pawn Shop. As Mrs. Risinger was preparing to turn left, Shuemaker, an employee of Covington Lumber, was also driving northbound on Teneha Street and rear-ended Mrs. Risinger's vehicle. The paramedics arrived soon after the collision and took Mrs. Risinger to the emergency room because she was complaining of pain in her neck and arm. After the accident, Mrs. Risinger continued to seek treatment from various physicians because of continual neck and back pain and eventually had to endure two surgeries to fuse her fifth through seventh cervical vertebrae.

On December 12, 2000, the Risingers filed suit against Shuemaker and Covington Lumber, alleging that Shuemaker's negligence caused the accident and Mrs. Risinger's resulting injuries.[1] Mrs. Risinger also alleged that Mr. Shuemaker was a reckless driver and that Covington Lumber knew or should have known that Shuemaker was a reckless driver.

On June 24, 2002, the case went to trial. After the case was argued to the jury, the jury was asked, "Did the negligence, if any, of Allen Shuemaker proximately cause the injury to the plaintiff, Elaine Risinger?" The jury answered, "No." The trial court entered a take-nothing judgment in favor of Shuemaker, and the Risingers now seek a reversal of that judgment.

### ISSUES PRESENTED

On appeal, the Risingers argue in their first issue that the trial court erred by allowing Dr. Fabian Polo ("Dr.Polo"), a biomedical engineer, to testify that the collision did not medically cause any of Mrs. Risinger's injuries. In their second issue, the Risingers argue that they are entitled to a new trial because the great weight of the evidence of Shuemaker's

---

1. Mr. Risinger sought damages for past and future·loss of consortium.

negligence is overwhelming; therefore, the jury's verdict should be reversed.

In an automobile accident case such as this, a plaintiff alleges that a defendant's negligence proximately caused an event (the accident), and this event caused injury to the plaintiff. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex.1984). Therefore, at trial the plaintiff must establish two causal nexuses in order to be entitled to recovery: 1) a causal nexus between the defendant's conduct and the event sued upon and 2) a causal nexus between the event sued upon and the plaintiff's injuries. *Id.* The nexus between the defendant's conduct and the event is established in the liability phase of a plaintiff's case. *Id.* at 732. Whether the event sued upon by the plaintiff caused the alleged injuries is another matter entirely. *Id.* The causal nexus between the event sued upon and the plaintiff's injuries is strictly referable to the damages portion of the plaintiff's cause of action. *Id.*

The question posed to the jury in the instant case was, "Did the negligence, *if any*, of Allen Shuemaker proximately cause the injury to the plaintiff, Elaine Risinger?" (emphasis added). The jury answered, "No." In our analysis, we assume from this answer that the jury first found that Shuemaker was not negligent. Accordingly, we must first address the Risingers' second issue: whether the evidence is factually sufficient to support the jury's finding that Shuemaker was not negligent. If so, then we need not discuss the Risingers' first issue, whether the trial court reversibly erred by allowing Dr. Polo to testify that the forces involved in the accident could not have caused Mrs. Risinger's injuries, because this testimony addresses the causation-of-damages aspect of the Risingers' case. *See Tanner v. Karnavas*, 86 S.W.3d 737, 741 (Tex.App.-Dallas 2002, pet. denied).

## FACTUAL SUFFICIENCY OF THE EVIDENCE OF SHUEMAKER'S NEGLIGENCE

### Standard of Review

In *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241–42 (Tex.2001), the supreme court discussed the appropriate standard of review where, as here, the party attacking an adverse finding on an issue had the burden of proof. In summary, the court held as follows:

> When a factual sufficiency challenge is presented, the complaining party must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. Under this review, after considering and weighing all the evidence, we can set aside the verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust.

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex.1986). This Court is not a factfinder and may not pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if a different conclusion could be reached on the evidence. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988); *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

### The Evidence

Patricia Clifton ("Clifton") stated that on September 7, 1999, she was working for Everett Harbison ("Harbison") at the Easy Money Pawn Shop and that she witnessed the accident from inside the store. She testified that she was standing behind a jewelry case that is situated behind two double doors containing two large plate

glass panes. Clifton could see the road from this vantage point, and she noticed a church van and Mrs. Risinger's car sitting in the middle of the road. Mrs. Risinger had her car's turn signal on and was waiting to turn into the parking lot. She noticed that a "couple of kids" on bicycles had traveled in front of the store and were "about a half block down toward town." Clifton then saw Shuemaker driving his vehicle and testified that he was looking over his shoulder as if he were looking at someone he knew that had passed by on the opposite side of the road.

Clifton stated that the front of Shuemaker's truck hit the rear of Mrs. Risinger's car and that the impact shoved her car at least a car length. After the impact, an ambulance came to the scene and removed Mrs. Risinger from her vehicle. Clifton further said that she related the events she had witnessed to Johnny Sanders ("Sanders"), the police officer who investigated the accident.

Sanders, a sergeant with the Center Police Department, testified that when he arrived at the scene of the accident, Shuemaker told him that he was okay and that

he had looked off and when he looked back around the vehicle had stopped in front of him. When he got ready to swerve he observed two kids on a bicycle riding to the right. When he swerved to miss the car he said that it was either the kids probably or the car, so . . . [h]e hit the car.

Sanders also stated that when he spoke with Clifton after the accident, Clifton told him that she saw some kids riding bicycles, but they had already passed in front of her and were not a factor in the accident. He said that Clifton also told him that before the impact, she saw Shuemaker looking at a woman going down the street and that the impact propelled Mrs. Risinger's car about ten to fifteen feet.

Sanders conducted his own investigation and found some dirt piles and scuff marks. He estimated that Mrs. Risinger's car had traveled about ten to twelve feet after the impact. Although he could not see any damage on Mrs. Risinger's back bumper, he noticed that the front-left fender on Shuemaker's truck was "sort of creased back" about a quarter of an inch. He said that when he went to check on Mrs. Risinger, she told him that she was not okay and that she was hurting behind her neck and in her back. On the accident report he filed after his investigation, Sanders noted that the factors which contributed to the accident were failure to control speed and driver inattention.

On cross-examination, Sanders stated that he never heard Shuemaker say that he was looking over his shoulder as he approached Mrs. Risinger's car. Instead, Sanders said that Shuemaker told him that two kids on bicycles, traveling in the opposite direction, prevented him from passing Mrs. Risinger on the shoulder. Sanders also stated that some of the opinions and findings in his accident report were based on what Clifton told him. He further stated that he himself had seen the two kids riding on bicycles as he was approaching the accident scene.

As a matter of form, Sanders testified that anytime he investigates a rear-end accident, he always gives a citation for failure to control speed to the person driving the impacting vehicle. With regard to the driver inattention factor, Sanders said that he listed that as a factor after his conversation with Clifton. With regard to the accident report, Sanders testified that Mrs. Risinger's vehicle sustained very weak damage, and that was a dent next to the license plate.

Mrs. Risinger stated that on the day of the accident, she was stopped, getting

ready to turn left into the parking lot of the pawn shop. Her husband, Louis, was already in the pawn shop. She was then struck from behind, and the impact was hard enough to sling her forward toward the steering wheel and then backwards. Mrs. Risinger immediately felt "burning and hurting" in her neck and right arm. She never saw anything behind her vehicle because she was looking forward the entire time. After the accident, she spoke to Sanders and was taken to the hospital.

On cross-examination, Mrs. Risinger stated that she had come to a complete stop before she turned left because several cars were traveling in the other lane in the opposite direction. She also said that she saw two kids riding on bicycles going in the opposite direction on the shoulder parallel to her lane, but they had already passed her before she stopped. After the wreck, she noticed other cars passing her on the shoulder, but she never saw Shuemaker's vehicle coming up behind her.

When Shuemaker testified, he stated that he had delivered a load of lumber to a contractor and was driving back to Covington Lumber. As he was traveling behind Mrs. Risinger's car, he noticed that she was coming to a stop when he saw her brake lights come on. Shuemaker further stated that

> [w]ell, like I normally do, I just lightly get on my brakes and go around the people on the shoulder. And as soon as I went to go around them, I kind of started to veer off the road and I seen the two boys on a bicycle coming towards me. And to tell you the truth he scared me and that's why I cut back. Because I knew I couldn't hit them. And I hit my brakes and then I was just holding the steering wheel and I could see the back end of her car. And there for a second I thought I was fixing to

stop. If I would of had a couple of more foot I probably could of.

Shuemaker said that his vehicle then came in contact with Mrs. Risinger's car. When questioned further, Shuemaker stated that his truck had veered over about a quarter of the way onto the shoulder when he saw the two boys coming toward him. The boys were a little in front of Mrs. Risinger's car when he turned back into the lane. Shuemaker said that he had plenty of time to get back into the lane and that the front of his vehicle "was pretty squared up with hers [Mrs. Risinger's]."

After the impact, Shuemaker got out of his truck and saw Mr. Risinger coming toward him. The two men went to Mrs. Risinger's vehicle, and after they checked on Mrs. Risinger, Shuemaker went into the pawn shop and called Covington Lumber. When he entered the store, he noticed two women standing in the far right corner of the store, and he told them to alert the authorities. When he exited the store, he stood beside his vehicle and began talking with Sanders. Shuemaker stated that prior to the accident, he was not looking over his shoulder and he did not see anyone he knew traveling in the opposite direction.

On cross-examination, Shuemaker stated that he admitted hitting Mrs. Risinger, but he did not "believe it made her have the neck surgeries and all." Shuemaker was also asked on cross-examination whether "[r]egardless of what damages you believe may have been caused, this accident is still your fault, correct?" Shuemaker replied, "As in bumping into her vehicle, yes." Shuemaker estimated that the distance the impact threw Mrs. Risinger's car was enough for two people to walk side by side, and that as he was sitting in his vehicle, he could not see the lower end of the back of Mrs. Risinger's car.

Harbison stated that on the day of the accident, he, Mr. Risinger, and Clifton were in the pawn shop before the accident occurred. Although he never saw the accident, he said that at the time of the accident, Clifton was sitting on a stool in front of the computer, located on the left side of the building looking out, and was nowhere near the jewelry case. When the accident occurred, Harbison did not remember hearing Clifton say anything that alerted him to the fact that two vehicles had made contact out on the road.

On cross-examination, Harbison stated that he recalled Clifton sitting on a stool behind the computer but admitted that she could have moved to behind the jewelry case before the accident occurred. On re-direct, Harbison said that a person sitting on the stool in front of the computer would not be able to see down the road because a pillar by the doors would obstruct the view.

### Analysis

The Risingers contend that jury's finding of "no" on the issue of negligence was against the great weight and preponderance of the evidence of Shuemaker's negligence. Specifically, they contend that because Shuemaker admitted fault, the jury should have found that he was negligent on the day in question. We disagree.

. "A party's testimonial declarations which are contrary to his position are quasi-admissions." *Mendoza v. Fidelity & Guaranty Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980). Those "quasi-admissions" are merely some evidence and are not conclusive upon the admitter. *Id.* The trier of fact decides the weight to be given such admissions. *Id.* Quasi-admissions are to be distinguished from the true judicial admission, which is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Id.* Although Shuemaker admitted that his vehi-

cle hit Mrs. Risinger's vehicle, he did not admit that he was negligent and that his negligence proximately caused Mrs. Risinger's injuries. Therefore, Shuemaker's statement is a quasi-admission and is not conclusive.

After viewing the entire record and the evidence in support of and against Shuemaker's negligence, we do not find that the great weight and preponderance of the evidence supports a reversal of the jury's finding of no negligence. The mere occurrence of a rear-end accident is not of itself evidence of negligence. *DeLeon v. Pickens,* 933 S.W.2d 286, 289 (Tex.App.-Corpus Christi 1996, writ denied). The plaintiff in such a case must prove specific acts of negligence on the part of the following driver and must also prove proximate cause. *Neese v. Dietz,* 845 S.W.2d 311, 314 (Tex.App.-Houston [1st Dist.] 1992, writ denied). The issue of whether a rear-end collision raises an issue of negligence or establishes it as a matter of law depends on all the facts and circumstances of a particular case. *DeLeon,* 933 S.W.2d at 289. Whether the plaintiff succeeds in proving negligence and proximate cause by a preponderance of the evidence is within the jury's province to determine. *Pearson v. DeBoer,* 99 S.W.3d 273, 276 (Tex.App.-Corpus Christi 2003, no pet.).

"Negligence" was defined to the jury as the

failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

Although there was sufficient evidence to support a jury finding that Shuemaker was negligent on the day in question by failing to keep a proper lookout or driving

inattentively, the evidence also supports the finding that he was not negligent. Shuemaker testified that when he started to pass Mrs. Risinger, he saw the boys riding on bicycles coming toward him, so he steered back into the lane because he did not want to hit the children. He testified that he could have stopped in time if he "had a couple more foot." The jury chose to believe Shuemaker's version of the events that occurred prior to the collision and determined that he did not fail to use ordinary care under the same or similar circumstances. Although we may disagree with the jury's conclusion, based on this record, we are not free to disregard their conclusion. *See Cruz v. Paso Del Norte Health Found.*, 44 S.W.3d 622, 646 (Tex.App.-El Paso 2001, pet. denied) (refusing to sit as thirteenth juror); *Gainsco County Mut. Ins. Co. v. Martinez*, 27 S.W.3d 97, 108 (Tex.App.San Antonio 2000, pet. dism'd by agr.) (same). The Risingers' second issue is overruled.

Because we have found factually sufficient evidence to support the jury's finding that Shuemaker was not negligent on September 7, 1999, we need not reach the Risingers' remaining issue. *See Tanner*, 86 S.W.3d at 741.

### DISPOSITION

The judgment of the trial court is *affirmed.*