# NO. 12-08-00330-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHIOKE BROOKS,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 124TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT OF* |
| *WILLIAM LAMAR LLOYD AND*<br>*GOOD SHEPHERD HOSPITAL, INC.*<br>*D/B/A GOOD SHEPHERD*<br>*MEDICAL CENTER,*<br>*APPELLEES* | *§* | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Chioke Brooks appeals from a no evidence summary judgment entered against him in his personal injury suit against Appellees William Lamar Lloyd and Good Shepherd Hospital, Inc., doing business as Good Shepherd Medical Center (GSH). In his sole issue, he contends there are genuine issues of material fact concerning whether Appellees breached a duty owed to him and whether their acts and omissions proximately caused his injuries. We reverse and remand.

## JURISDICTION

Appellees assert that this court lacks jurisdiction over this appeal. Originally, Brooks's cause of action against Appellees was part of a larger, multi-party lawsuit. The original trial court cause number assigned to the suit was 2007-1306-B. On the same day the summary judgment was signed, the trial court signed an order of severance, at the request of Appellees, severing the claims and causes of action asserted by Brooks from the rest of the lawsuit. The trial court assigned docket number 2007-1306-B-1 to the severed action. However, the order granting the summary judgment and Brooks's notice of appeal both reflect cause number 2007-1306-B. Appellees argue that Brooks has attempted to appeal the main case, in which no final, appealable order has been entered, rather than the severed cause.

Courts of appeals have jurisdiction when the appellant makes a bona fide attempt to invoke appellate jurisdiction. *Tanner v. Karnavas*, 86 S.W.3d 737, 744 (Tex. App.–Dallas 2002, pet. denied). Where a timely notice of appeal for a severed cause of action is filed in the original cause number, the mistake will not defeat appellate jurisdiction. *See Blankenship v. Robins*, 878 S.W.2d 138, 138-39 (Tex. 1994). Accordingly, although the summary judgment and notice of appeal reflect the original cause number and not the cause number assigned after severance, this court has jurisdiction.

## BACKGROUND

At 3:00 a.m. on July 30, 2006, Brooks's vehicle collided with a GSH ambulance driven by Lloyd. Brooks sued Lloyd and GSH for negligence. Appellees filed a motion for summary judgment asserting there is no evidence that they breached any duty or that they proximately caused the collision. Contending that Brooks was intoxicated, they assert that any evidence he offered would be speculation. In his response, Brooks argued that fact questions exist as to whether he was intoxicated, whether Lloyd breached a duty owed to Brooks, and whether Lloyd's actions were a proximate cause of the collision. In support of his response, Brooks offered deposition testimony of six witnesses, the police report of the accident, and his medical records. The trial court granted Appellees' motion for summary judgment and ordered that Brooks take nothing from Appellees.

## STANDARD OF REVIEW

After an adequate time for discovery has passed, a party without the burden of proof at trial may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance with rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged element. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). We review a no evidence motion for summary judgment under the same legal sufficiency standards as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *Id*. at 751. If the evidence supporting a finding rises to a level that would enable reasonable, fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id*.

2

Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *Id*.

We review the entire record in the light most favorable to the nonmovant, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 52 Tex. Sup. Ct. J. 827, 2009 Tex. LEXIS 320, at *8 (Tex. June 5, 2009). If the trial court's order does not specify the grounds on which it granted summary judgment, we affirm the trial court's ruling if any of the theories advanced in the motion is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

### EXISTENCE OF FACT QUESTIONS

In his sole issue, Brooks contends the trial court erred in granting Appellees' motion for summary judgment. He argues that there are genuine issues of material fact concerning whether Appellees breached a duty owed to Brooks and whether their acts and omissions proximately caused the collision. He argues that his level of impairment is a factor for the jury to consider in determining causation.

**Summary Judgment Evidence**

Brooks offered his own deposition testimony in which he stated that when the ambulance was only about ten yards away from his vehicle, he noticed that it was not in its proper lane of travel. He also admitted that he had been drinking beer at a coworker's house before the accident, but denied being intoxicated.

Easton Chief of Police Mark Stith investigated the scene of the accident. In his report, he explained that Lloyd was traveling north on Main Street. According to the report, Lloyd entered into a ninety degree left curve and failed to give half of the roadway as Brooks traveled south on Main and entered the same curve. The report indicates that the vehicles hit head-on in the center of the road.

Stith also testified by deposition. He spoke to Brooks at the scene, noticing an odor of alcohol coming from his breath, and performed a field sobriety test. Due to Brooks's leg injury, Stith did not observe Brooks walking. He had "just a minute amount of nystagmus in his eyes," but did not have slurred speech. Stith believed Brooks had been drinking and, in fact, Brooks admitted he had been drinking. But Stith did not believe Brooks to be intoxicated.

Champion EMS personnel thought Brooks was intoxicated, and they requested a Department

3

of Public Safety officer to investigate the accident. Stith notified dispatch and as a result, Trooper Brandon Smith came to the accident scene. According to Stith, Smith performed the same tests on Brooks and came to the same conclusion Stith had, that Brooks had been drinking, but was not intoxicated. Stith remarked that every individual reacts differently to alcohol and some people are able to function well while intoxicated.

Stith explained that the site of the accident is a blind, ninety degree curve. It is the site of one or two accidents a week, mostly one vehicle accidents. The road is just barely wide enough to accommodate two vehicles if they meet in the curve. Stith testified that he based his report on information gained by speaking with the parties and by observing the scene. The accident report is his opinion of what happened at the accident scene. He testified that, from what he saw at the scene, he believed both drivers were at fault. According to his report, Lloyd entered into the ninety degree left curve, failing to give half of the roadway, when Brooks entered the same curve. He indicated that Brooks took a faulty evasive action and the vehicles hit head-on in the center of the roadway. Stith testified that, based on the amount of damage done to both vehicles, he thought Brooks was operating over the posted speed limit of thirty miles per hour. The ambulance was coming out of the curve when the impact occurred and was not moving at a great rate of speed. Stith testified that Brooks's alcohol consumption was a factor in the accident. Alcohol consumption can affect a person's ability to gauge speed, reaction time, motor skills, and eye/hand coordination. Stith explained that most people driving into the curve in Brooks's direction just straighten out the curve and end up in a pasture. Most people coming from Lloyd's direction cut the corner left.

Sandra Davidson, a paramedic, testified by deposition. She and her partner, Ron Russell, drove to the scene of the accident when they learned that the other ambulance had been involved in a wreck. The wrecked vehicles were in the middle of the curve. Brooks was extremely emotional, crying, repeatedly saying, "my car, my car, my car." She smelled "ETOH"[1] on Brooks and she thought he was intoxicated. Approximately thirty minutes after the wreck occurred, Davidson and Russell transported Brooks to GSH. She and Russell filled out a form identifying Brooks and his injury. They indicated that he was alert and oriented as to person, place, and time.

Testifying by deposition, Lloyd said he was driving the ambulance at the time of the accident

___

[1] ETOH is a medical term for alcohol. MEDICAL ABBREVIATIONS: 28,000 CONVENIENCES AT THE EXPENSE OF COMMUNICATION AND SAFETY 106 (Neil M. Davis ed., 13th ed. 2007).

4

and denied having consumed any alcohol on the day of the accident. Describing the facts surrounding the accident, he explained that there is "just a bit of a grade" going up in the direction he was traveling, and a blind curve on the two lane road. He recalled going around the curve, specifically testifying that he was in his lane of traffic, and saw the headlights on Brooks's vehicle. His partner, Dustin Williams, yelled, "He's going to hit us." Although Lloyd thought he tried to go to the right, he testified that before he could respond, the impact occurred and he briefly lost consciousness. He had been driving only about twenty miles per hour because of the ninety degree turn and was almost out of the curve. He reasoned that he knew Brooks was in the ambulance's lane of traffic because he knew he was driving in his own lane when he got hit. He regained consciousness when Williams pulled him out of the ambulance. He was disoriented and in a lot of pain. He was taken to GSH. Lloyd could not recall whether the road was marked with stripes indicating the lanes. He said he was as far to the right as he could have been. He testified that Brooks's vehicle "moved at a very, very high rate of speed."

Ronald Russell, an EMT, drove an ambulance to the accident site with his partner, Davidson. He watched others at the scene until Brooks said he wanted to go to a hospital. Brooks walked to the ambulance and stepped in of his own volition. Russell assessed Brooks on the way, sitting directly across from him in the confined space. Russell did not notice the smell of alcohol on Brooks.

Trooper Brandon Smith of the Texas Department of Public Safety testified that he was called to the scene of the accident involving Brooks and the ambulance. He said he did not remember doing a field sobriety test on Brooks. Smith spoke to Brooks, and because he smelled the odor of alcoholic beverage on his breath, concluded that Brooks had been drinking. He saw no other indications that he had been drinking. He explained that some clues that a person is under the influence of alcohol include slurred speech, unsteadiness on their feet, and glassy or bloodshot eyes. He also explained that he does not make a determination about whether someone is intoxicated solely on the smell of alcohol on the person's breath. Trooper Smith read the medical record that indicated Brooks had a .193 blood alcohol level on the night of the accident. He noted that the legal limit in Texas is .08 and anything above that is considered intoxication. Smith explained that as a result of such a blood alcohol level, Brooks's judgment and perception of his speed would be "off." Therefore, it is possible he could have driven the speed limit, or faster, or slower than the speed

5

limit. It is also possible that his perception would not be accurate when attempting to drive around the curve and he might fail to give half the roadway. Smith testified that Brooks's alcohol consumption probably played a role in the accident. He stated that Brooks steered to the left, which in this case constituted faulty evasive action. Smith testified that a person who has a blood alcohol level of .19 could be oriented as to person, place, and time and could be aware of what is going on. Additionally, that individual's speech could be slurred. Whether the individual has problems walking varies with each person.

**Discussion**

The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. ***IHS Cedars Treatment Ctr. of Desoto, Texas, Inc. v. Mason***, 143 S.W.3d 794, 798 (Tex. 2004). The two elements of proximate cause are cause in fact and foreseeability. ***Id***. Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred. ***Id***. at 799. Although proximate cause may be shown by circumstantial evidence, it cannot be established by mere conjecture or guess, but rather must be proved by evidence of probative force. ***Summers v. Fort Crockett Hotel, Ltd.***, 902 S.W.2d 20, 25 (Tex. App.–Houston [1st Dist.] 1995, writ. denied). The determination of negligence is typically a fact question for the jury. ***Ray v. Farmers' State Bank of Hart, Texas***, 576 S.W.2d 607, 609 (Tex. 1979). The question becomes one of law only when reasonable minds can draw but one conclusion. *See **id***.

Here, Lloyd had a duty to drive in his lane. If he did not do so, he breached that duty. If, by not remaining in his lane, he caused the accident, then Lloyd could be found liable for negligence. The summary judgment evidence shows that, based on his investigation of the accident scene that night, Stith believed that both drivers were at fault. He testified that Brooks was driving too fast and executed a faulty evasive action, while Lloyd failed to remain entirely in his own lane. He said the vehicles hit head-on in the center of the road. Brooks also testified that the ambulance was not in its lane.

Lloyd, on the other hand, specifically stated that he was driving in his lane when Brooks crossed the center of the road into the ambulance's lane. Appellees argue that, since Brooks was intoxicated, his testimony and any statements he made to Stith on the night of the accident are nothing more than speculation. They also argue that the police report is not probative because it

contains conclusory statements and is based at least in part on statements by an intoxicated Brooks. However, nothing in this record definitively states that Brooks was unable to function at a level at which he could determine what was happening and verbalize it to Stith. Further, Russell and Davidson indicated in their report that Brooks was oriented as to person, place, and time. Trooper Smith's testimony emphasized that how intoxication affects people varies from person to person. He explained that it is possible that an intoxicated person's perception would not be accurate, which could affect how fast he drives. The implication is that it is possible that perception and speed would not be affected. Further, he explained, intoxication might have an effect, but does not conclusively determine how fast a person drives or how much difficulty he has walking. Moreover, Stith's report was based on his investigation of the accident scene shortly after the accident.

We conclude that reasonable minds could differ as to whether Lloyd was driving in his own lane; therefore more than a scintilla of evidence exists on the elements of duty and causation. *See Chapman*, 118 S.W.3d at 751. Consequently, Brooks's summary judgment evidence raised fact issues as to whether Lloyd breached a duty of care and whether Lloyd's actions were a contributing cause of the accident. *See id*. Accordingly, the trial court erred in granting Appellees' motion for summary judgment. We sustain Brooks's sole issue.

### DISPOSITION

We *reverse* the trial court's judgment and *remand* this cause for further proceedings in the trial court.

    JAMES T. WORTHEN    
Chief Justice

Opinion delivered July 15, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)