NO. 12-08-00330-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS



CHIOKE BROOKS,
§
 APPEAL FROM THE 124TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


WILLIAM LAMAR LLOYD AND 

GOOD SHEPHERD HOSPITAL, INC.
§
 GREGG COUNTY, TEXAS

D/B/A GOOD SHEPHERD 

MEDICAL CENTER,

APPELLEES






MEMORANDUM OPINION


 Chioke Brooks appeals from a no evidence summary judgment entered against him in his
personal injury suit against Appellees William Lamar Lloyd and Good Shepherd Hospital, Inc.,
doing business as Good Shepherd Medical Center (GSH). In his sole issue, he contends there are
genuine issues of material fact concerning whether Appellees breached a duty owed to him and
whether their acts and omissions proximately caused his injuries. We reverse and remand.


Jurisdiction

 Appellees assert that this court lacks jurisdiction over this appeal. Originally, Brooks's cause
of action against Appellees was part of a larger, multi-party lawsuit. The original trial court cause
number assigned to the suit was 2007-1306-B. On the same day the summary judgment was signed,
the trial court signed an order of severance, at the request of Appellees, severing the claims and
causes of action asserted by Brooks from the rest of the lawsuit. The trial court assigned docket
number 2007-1306-B-1 to the severed action. However, the order granting the summary judgment
and Brooks's notice of appeal both reflect cause number 2007-1306-B. Appellees argue that Brooks
has attempted to appeal the main case, in which no final, appealable order has been entered, rather
than the severed cause.

 Courts of appeals have jurisdiction when the appellant makes a bona fide attempt to invoke
appellate jurisdiction. Tanner v. Karnavas, 86 S.W.3d 737, 744 (Tex. App.-Dallas 2002, pet.
denied). Where a timely notice of appeal for a severed cause of action is filed in the original cause
number, the mistake will not defeat appellate jurisdiction. See Blankenship v. Robins, 878 S.W.2d
138, 138-39 (Tex. 1994). Accordingly, although the summary judgment and notice of appeal reflect
the original cause number and not the cause number assigned after severance, this court has
jurisdiction. 

Background

 At 3:00 a.m. on July 30, 2006, Brooks's vehicle collided with a GSH ambulance driven by
Lloyd. Brooks sued Lloyd and GSH for negligence. Appellees filed a motion for summary
judgment asserting there is no evidence that they breached any duty or that they proximately caused
the collision. Contending that Brooks was intoxicated, they assert that any evidence he offered
would be speculation. In his response, Brooks argued that fact questions exist as to whether he was
intoxicated, whether Lloyd breached a duty owed to Brooks, and whether Lloyd's actions were a
proximate cause of the collision. In support of his response, Brooks offered deposition testimony
of six witnesses, the police report of the accident, and his medical records. The trial court granted
Appellees' motion for summary judgment and ordered that Brooks take nothing from Appellees.


Standard of Review

 After an adequate time for discovery has passed, a party without the burden of proof at trial
may move for summary judgment on the ground that the nonmoving party lacks supporting evidence
for one or more essential elements of its claim. Tex. R. Civ. P. 166a(i). Once a no evidence motion
has been filed in accordance with rule 166a(i), the burden shifts to the nonmovant to bring forth
evidence that raises a fact issue on the challenged element. See Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004). We review a no evidence motion for summary judgment under the
same legal sufficiency standards as a directed verdict. King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 750-51 (Tex. 2003). A no evidence motion is properly granted if the nonmovant fails to bring
forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an
essential element of the nonmovant's claim on which the nonmovant would have the burden of proof
at trial. Id. at 751. If the evidence supporting a finding rises to a level that would enable reasonable,
fair minded persons to differ in their conclusions, then more than a scintilla of evidence exists. Id. 
Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create
a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. Id.

 We review the entire record in the light most favorable to the nonmovant, crediting evidence
favorable to that party if reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not. Timpte Indus., Inc. v. Gish, 52 Tex. Sup. Ct. J. 827, 2009 Tex. LEXIS
320, at *8 (Tex. June 5, 2009). If the trial court's order does not specify the grounds on which it
granted summary judgment, we affirm the trial court's ruling if any of the theories advanced in the
motion is meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 

Existence of Fact Questions

 In his sole issue, Brooks contends the trial court erred in granting Appellees' motion for
summary judgment. He argues that there are genuine issues of material fact concerning whether
Appellees breached a duty owed to Brooks and whether their acts and omissions proximately caused
the collision. He argues that his level of impairment is a factor for the jury to consider in
determining causation. 

Summary Judgment Evidence

 Brooks offered his own deposition testimony in which he stated that when the ambulance was
only about ten yards away from his vehicle, he noticed that it was not in its proper lane of travel. He
also admitted that he had been drinking beer at a coworker's house before the accident, but denied
being intoxicated.

 Easton Chief of Police Mark Stith investigated the scene of the accident. In his report, he
explained that Lloyd was traveling north on Main Street. According to the report, Lloyd entered into
a ninety degree left curve and failed to give half of the roadway as Brooks traveled south on Main
and entered the same curve. The report indicates that the vehicles hit head-on in the center of the
road.

 Stith also testified by deposition. He spoke to Brooks at the scene, noticing an odor of
alcohol coming from his breath, and performed a field sobriety test. Due to Brooks's leg injury, Stith
did not observe Brooks walking. He had "just a minute amount of nystagmus in his eyes," but did
not have slurred speech. Stith believed Brooks had been drinking and, in fact, Brooks admitted he
had been drinking. But Stith did not believe Brooks to be intoxicated. 

 Champion EMS personnel thought Brooks was intoxicated, and they requested a Department
of Public Safety officer to investigate the accident. Stith notified dispatch and as a result, Trooper
Brandon Smith came to the accident scene. According to Stith, Smith performed the same tests on
Brooks and came to the same conclusion Stith had, that Brooks had been drinking, but was not
intoxicated. Stith remarked that every individual reacts differently to alcohol and some people are
able to function well while intoxicated.

 Stith explained that the site of the accident is a blind, ninety degree curve. It is the site of one
or two accidents a week, mostly one vehicle accidents. The road is just barely wide enough to
accommodate two vehicles if they meet in the curve. Stith testified that he based his report on
information gained by speaking with the parties and by observing the scene. The accident report is
his opinion of what happened at the accident scene. He testified that, from what he saw at the scene,
he believed both drivers were at fault. According to his report, Lloyd entered into the ninety degree
left curve, failing to give half of the roadway, when Brooks entered the same curve. He indicated
that Brooks took a faulty evasive action and the vehicles hit head-on in the center of the roadway. 
Stith testified that, based on the amount of damage done to both vehicles, he thought Brooks was
operating over the posted speed limit of thirty miles per hour. The ambulance was coming out of
the curve when the impact occurred and was not moving at a great rate of speed. Stith testified that
Brooks's alcohol consumption was a factor in the accident. Alcohol consumption can affect a
person's ability to gauge speed, reaction time, motor skills, and eye/hand coordination. Stith
explained that most people driving into the curve in Brooks's direction just straighten out the curve
and end up in a pasture. Most people coming from Lloyd's direction cut the corner left. 

 Sandra Davidson, a paramedic, testified by deposition. She and her partner, Ron Russell,
drove to the scene of the accident when they learned that the other ambulance had been involved in
a wreck. The wrecked vehicles were in the middle of the curve. Brooks was extremely emotional,
crying, repeatedly saying, "my car, my car, my car." She smelled "ETOH" (1) on Brooks and she
thought he was intoxicated. Approximately thirty minutes after the wreck occurred, Davidson and
Russell transported Brooks to GSH. She and Russell filled out a form identifying Brooks and his
injury. They indicated that he was alert and oriented as to person, place, and time.

 Testifying by deposition, Lloyd said he was driving the ambulance at the time of the accident
and denied having consumed any alcohol on the day of the accident. Describing the facts
surrounding the accident, he explained that there is "just a bit of a grade" going up in the direction
he was traveling, and a blind curve on the two lane road. He recalled going around the curve,
specifically testifying that he was in his lane of traffic, and saw the headlights on Brooks's vehicle. 
His partner, Dustin Williams, yelled, "He's going to hit us." Although Lloyd thought he tried to go
to the right, he testified that before he could respond, the impact occurred and he briefly lost
consciousness. He had been driving only about twenty miles per hour because of the ninety degree
turn and was almost out of the curve. He reasoned that he knew Brooks was in the ambulance's lane
of traffic because he knew he was driving in his own lane when he got hit. He regained
consciousness when Williams pulled him out of the ambulance. He was disoriented and in a lot of
pain. He was taken to GSH. Lloyd could not recall whether the road was marked with stripes
indicating the lanes. He said he was as far to the right as he could have been. He testified that
Brooks's vehicle "moved at a very, very high rate of speed." 

 Ronald Russell, an EMT, drove an ambulance to the accident site with his partner, Davidson. 
He watched others at the scene until Brooks said he wanted to go to a hospital. Brooks walked to
the ambulance and stepped in of his own volition. Russell assessed Brooks on the way, sitting
directly across from him in the confined space. Russell did not notice the smell of alcohol on
Brooks. 

 Trooper Brandon Smith of the Texas Department of Public Safety testified that he was called
to the scene of the accident involving Brooks and the ambulance. He said he did not remember
doing a field sobriety test on Brooks. Smith spoke to Brooks, and because he smelled the odor of
alcoholic beverage on his breath, concluded that Brooks had been drinking. He saw no other
indications that he had been drinking. He explained that some clues that a person is under the
influence of alcohol include slurred speech, unsteadiness on their feet, and glassy or bloodshot eyes. 
He also explained that he does not make a determination about whether someone is intoxicated
solely on the smell of alcohol on the person's breath. Trooper Smith read the medical record that
indicated Brooks had a .193 blood alcohol level on the night of the accident. He noted that the legal
limit in Texas is .08 and anything above that is considered intoxication. Smith explained that as a
result of such a blood alcohol level, Brooks's judgment and perception of his speed would be "off." 
Therefore, it is possible he could have driven the speed limit, or faster, or slower than the speed
limit. It is also possible that his perception would not be accurate when attempting to drive around
the curve and he might fail to give half the roadway. Smith testified that Brooks's alcohol
consumption probably played a role in the accident. He stated that Brooks steered to the left, which
in this case constituted faulty evasive action. Smith testified that a person who has a blood alcohol
level of .19 could be oriented as to person, place, and time and could be aware of what is going on. 
Additionally, that individual's speech could be slurred. Whether the individual has problems
walking varies with each person.

Discussion

 The elements of a negligence cause of action are the existence of a legal duty, a breach of that
duty, and damages proximately caused by the breach. IHS Cedars Treatment Ctr. of Desoto, Texas,
Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004). The two elements of proximate cause are cause
in fact and foreseeability. Id. Cause in fact is established when the act or omission was a substantial
factor in bringing about the injuries, and without it, the harm would not have occurred. Id. at 799. 
Although proximate cause may be shown by circumstantial evidence, it cannot be established by
mere conjecture or guess, but rather must be proved by evidence of probative force. Summers v.
Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex. App.-Houston [1st Dist.] 1995, writ. denied). 
The determination of negligence is typically a fact question for the jury. Ray v. Farmers' State
Bank of Hart, Texas, 576 S.W.2d 607, 609 (Tex. 1979). The question becomes one of law only
when reasonable minds can draw but one conclusion. See id.

 Here, Lloyd had a duty to drive in his lane. If he did not do so, he breached that duty. If, by
not remaining in his lane, he caused the accident, then Lloyd could be found liable for negligence. 
The summary judgment evidence shows that, based on his investigation of the accident scene that
night, Stith believed that both drivers were at fault. He testified that Brooks was driving too fast and
executed a faulty evasive action, while Lloyd failed to remain entirely in his own lane. He said the
vehicles hit head-on in the center of the road. Brooks also testified that the ambulance was not in
its lane. 

 Lloyd, on the other hand, specifically stated that he was driving in his lane when Brooks
crossed the center of the road into the ambulance's lane. Appellees argue that, since Brooks was
intoxicated, his testimony and any statements he made to Stith on the night of the accident are
nothing more than speculation. They also argue that the police report is not probative because it
contains conclusory statements and is based at least in part on statements by an intoxicated Brooks.
However, nothing in this record definitively states that Brooks was unable to function at a level at
which he could determine what was happening and verbalize it to Stith. Further, Russell and
Davidson indicated in their report that Brooks was oriented as to person, place, and time. Trooper
Smith's testimony emphasized that how intoxication affects people varies from person to person. 
He explained that it is possible that an intoxicated person's perception would not be accurate, which
could affect how fast he drives. The implication is that it is possible that perception and speed would
not be affected. Further, he explained, intoxication might have an effect, but does not conclusively
determine how fast a person drives or how much difficulty he has walking. Moreover, Stith's report
was based on his investigation of the accident scene shortly after the accident. 

 We conclude that reasonable minds could differ as to whether Lloyd was driving in his own
lane; therefore more than a scintilla of evidence exists on the elements of duty and causation. See
Chapman, 118 S.W.3d at 751. Consequently, Brooks's summary judgment evidence raised fact
issues as to whether Lloyd breached a duty of care and whether Lloyd's actions were a contributing
cause of the accident. See id. Accordingly, the trial court erred in granting Appellees' motion for
summary judgment. We sustain Brooks's sole issue.

Disposition

 We reverse the trial court's judgment and remand this cause for further proceedings in the
trial court.


 JAMES T. WORTHEN 

 Chief Justice


Opinion delivered July 15, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.








(PUBLISH)
1. ETOH is a medical term for alcohol. Medical Abbreviations: 28,000 Conveniences at the Expense
of Communication and Safety 106 (Neil M. Davis ed., 13th ed. 2007).