**Affirmed and Opinion filed May 21, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-11-00843-CV

**JESCO OPERATING, L.P., Appellant**

**V.**

**HESS CORPORATION, Appellee**

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2009-45089**

## O P I N I O N

Jesco Operating, L.P. appeals from a take-nothing judgment favoring Hess Corporation. Jesco sued Hess for breach of a pipeline construction contract and fraudulent inducement, and Hess counter-claimed, seeking an offset for Jesco's own breach of the same contract. A jury declined to find either party liable on any theory submitted. The trial court entered judgment in accordance with the verdict. On appeal, Jesco contends that the jury's verdict is not supported by legally and

factually sufficient evidence. We affirm.

## I. Background

Hess accepted Jesco's $1.4 million bid to build a gas pipeline as part of a gas field expansion project near Seminole, Texas. As the March 31, 2009 completion deadline neared, it became clear that Jesco would not be able to finish the project on time. Jesco pointed to problems with a company employed by Hess to lay liner for the pipeline as the cause for the delays. Jesco therefore asked that Hess issue a new work order for sums above the agreed contract price to pay for work Jesco claimed was beyond the scope of the project as bid. Hess denied that request, apparently blaming cost overruns on Jesco's having damaged other pipelines in the project area during construction. Jesco then filed suit against Hess.

On April 16, 2009, representatives of the two companies, primarily Jesco's owner Allan Williamson and Hess's project manager Brock Hajdik, met to discuss the dispute. Based on agreements reached at this meeting, the parties signed a supplemental letter agreement on April 24, 2009 that expressly amended the original contract. Under the supplemental agreement, Jesco agreed to dismiss its lawsuit and to finish the pipeline "at a 'cost basis' without uplift or increase" as was to be reflected in a "revised rate sheet." The agreement left open the process for creating the new rate sheet, but the agreement reaffirms Hess's right of audit, as contained in the original agreement, and requires that Jesco "provide to Hess on demand all relevant documents in support of the cost basis." Hess also agreed to pay Jesco an additional $289,000 for work Jesco already had completed. It was undisputed that the purpose of the letter agreement was to "wipe the slate clean" between the two companies going forward.

Thereafter, Jesco continued working on construction of the pipeline, and new disputes arose as to the "at cost" rates Hess was to pay for Jesco's labor and

2

equipment. Hess did not dispute that Jesco was entitled to recoup as costs some of its overhead on the project, but expressed frustration at the lack of documentation Jesco provided regarding the rates used on its invoices. The parties never agreed to a rate sheet as contemplated in their supplemental agreement. At one point, project manager Hajdik sent Hess employee Edward DelaO to Jesco's local office to collect data on Jesco's labor costs. According to Hajdik, the key disputes regarding labor costs included a lack of substantiation of rates and hours worked as well as how to account for Jesco's overhead costs.

Hess paid on only four invoices after April 17, 2009, the point at which the "slate" had been "wiped clean." All four invoices were for equipment costs. Hess did not pay any invoice earmarked for labor costs.

Three of the equipment invoices were ostensibly "pass through" invoices wherein Jesco was to simply pass along the cost identified in a third-party, equipment rental invoice it had received. Hess also paid part of a fourth invoice that was disputed. This payment came after a series of emails and telephone conversations principally between Williamson and Hajdik on the question of rates. Williamson recorded a June 17, 2009 telephone conversation in which Sam Hakes, a local supervisor for Hess on the project, joined the call with Hajdik and indicated that certain equipment charges on the invoice were in error. At the conclusion of the phone call, Williamson agreed to amend the invoice as requested, and Hajdik agreed to pay it. Hajdik testified at trial, however, that in an earlier telephone call that same day, he had reserved the right to further review the equipment charges, and upon further review, Hakes discovered additional problems with the charges. According to Hajdik, he subsequently agreed to pay only what Jesco could substantiate at the time, and Williamson agreed to accept that payment. Hajdik further explained that he agreed to make the payment without adequate

3

substantiation because he knew Jesco needed the funds to pay employees and continue in operation.

When Hess refused to pay later invoices, Jesco quit working on the pipeline and filed the present lawsuit. Hess then paid another pipeline construction company, Ferguson Construction, to finish the project. Hess's position at trial was that when it finally audited Jesco's books (during the litigation), it determined that Hess had overpaid by so much on the equipment invoices, above Jesco's actual costs, that it had "covered" the amounts due for Jesco's labor costs, without ever having paid a penny specifically earmarked for labor.[1] Hess additionally argued at trial that it was entitled to offset the amounts paid to Ferguson against any amounts it might be found to owe Jesco. As discussed in detail below, Jesco makes numerous arguments as to why Hess's numbers are incorrect. Jesco places particular emphasis on statements by Hajdik that it claims were admissions that Hess still owes Jesco under the agreement.

Although the jury was given a rather lengthy charge, it answered only two questions. In response to Question 1, the jury answered "No" when asked if Hess failed to comply with the agreement by failing to pay the "full amount" it agreed to pay for the services provided by Jesco. In response to Question 18, the jury again answered "No" when asked whether Jesco failed to comply with the agreement by failing to complete its work on the pipeline.

On appeal, Jesco contends that the evidence conclusively demonstrated that Hess failed to pay Jesco all it owed and thus Hess failed to comply with the agreement. Jesco additionally argues that its damages and attorney's fees were conclusively proven, and in the alternative, the jury's verdict is against the great

---

[1] In something of a non sequitur to the question at hand, Hajdik testified at one point that he thought Hess still owed Jesco about $40,000 for fuel costs.

4

weight and preponderance of the evidence, necessitating a remand for a new trial. Hess does not contest any jury finding or any part of the trial court's judgment.

## II.  Standards of Review

In its three issues, Jesco challenges the sufficiency of the evidence to support the jury's negative response to Question 1 regarding whether Hess failed to comply with the supplemental agreement by failing to pay the full amount due to Jesco under the agreement.  In challenging the legal sufficiency of the evidence, Jesco must establish that the evidence conclusively demonstrated that Hess failed to pay the full amount it was required to pay under the agreement.  *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241-42 (Tex. 2001).  In considering a legal-sufficiency challenge, we view the evidence in the light most favorable to the fact finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005); *Port of Houston Auth. of Harris County v. Zachry Constr. Corp.*, 377 S.W.3d 841, 859 (Tex. App.—Houston [14th Dist.] 2012, pet. filed).

To successfully challenge the factual sufficiency of the evidence to support the jury's finding, Jesco must demonstrate that the evidence is so weak or the finding  is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.  *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Horowitz v. Berger*, 377 S.W.3d 115, 122 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

## III.  Legal Sufficiency

We begin by addressing Jesco's legal sufficiency contentions.  Question 1 in the jury charge read in full as follows:

**Did Hess fail to comply with The Supplemental Agreement by failing to pay Jesco the full amount for the services provided by Jesco in accordance with the terms of The Supplemental Agreement?**

You are instructed that The Supplemental Agreement provides that "the Jesco Hourly Rate shall be at a 'cost basis' without uplift or increase as reflected in the revised rate sheet submitted with contemplated Change Order Number 2 (Hourly Time and Materials)."

Hess's failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

(a) the extent to which Jesco will be deprived of the benefit which it reasonably expected;

(b) the extent to which Jesco can be adequately compensated for the part of that benefit of which it will be deprived;

(c) the extent to which Hess will suffer forfeiture;

(d) the likelihood that Hess will cure its failure, taking into account the circumstances including any reasonable assurances;

(e) the extent to which the behavior of Hess comports with standards of good faith and fair dealing.

A party's conduct includes the conduct of another who acts with the party's authority or apparent authority. Authority for another to act for a party must arise from the party's agreement that the other act on behalf and for the benefit of the party, if a party so authorizes another to perform an act, that other party is also authorized to do whatever else is proper, usual and necessary to perform the act expressly authorized. Apparent authority exists if a party: (1) knowingly permits another to hold himself out as having authority or, (2) through lack of ordinary care, bestows on another such indications of authority that lead a reasonably prudent person to rely on the apparent existence of authority to his detriment. Only the acts of the party sought to be charged with responsibility for the conduct of another may be considered in determining whether apparent authority exists.

6

The jury answered this question in the negative, and Jesco now contends that the evidence is legally insufficient to support that finding.

### A. Hajdik's Alleged Admissions

Jesco makes numerous assertions regarding why it contends the evidence conclusively demonstrates that Hess failed to pay the full amount due. Among those assertions are several arguments based on alleged admissions by Hess's project manager Brock Hajdik. It appears undisputed that Hajdik was the primary Hess representative dealing with Jesco on matters relating to payment.[2] The alleged admissions by Hajdik include that Hess: (1) failed to pay any amount for Jesco's labor costs, (2) backed out of an agreement to pay certain equipment invoices, and (3) still owed Jesco about $40,000.

### 1. Labor Costs

Regarding the first alleged admission, while Hajdik acknowledged that Hess did not pay any specific invoice earmarked for labor, he insisted that Hess had overpaid so much on equipment costs—due, he says, to Jesco's persistent overbilling practices—that all of the labor costs were actually "covered." Thus, Hajdik's "admission" regarding labor costs does not amount to an admission that Hess failed to pay what it was required to pay under the agreement or that it failed to comply with that agreement.

### 2. Equipment Invoices

Similarly, while Hajdik also acknowledged that Hess failed to pay the entirety of the equipment costs discussed in the June 17 telephone call between

---

[2] Jesco points to testimony by Hess employee Edward DelaO wherein he stated that he advised Hajdik to pay Jesco. Jesco does not, however, argue that DelaO's testimony alone demonstrates that Hess did not pay all it was required to pay to Jesco. Indeed, there was evidence a substantial payment was made after DelaO allegedly made this statement to Hajdik.

7

Hajdik, Hakes (Hess's local supervisor), and Williamson (Jesco's owner), Hajdik also testified that, in a separate telephone call, he reserved the right for Hess to reexamine the equipment invoices before payment would be made.[3] The next day, Hajdik emailed Williamson to say that Hakes was in the process of reviewing the invoices and payment would be forthcoming "provided there are no gross errors." There is no indication Williamson objected to this procedure at the time. Moreover, according to Hakes, he discovered significant problems with Jesco's equipment invoices, including that Jesco was billing Hess for rented equipment (which should have been submitted as a pass-through, third-party invoice) as though the equipment were owned by Jesco.[4] Consequently, Hajdik's "admission" that invoices discussed in the June 17 phone call were not paid in full does not equate to an admission either that Hess failed to pay all that it owed to Jesco or that Hess failed to comply with the supplemental agreement.[5]

---

[3] Hajdik agreed that he "backed out of the deal . . . made on the phone call"; however, he explained that he did so only when the further review of equipment invoices revealed substantial problems. The jury was not asked whether Hess failed to comply with any subsequent oral agreement on equipment invoices made after the supplemental agreement was executed.

[4] Williamson explained that Jesco was required to bill in this manner in order to recoup its actual costs for this equipment. However, the jury was free to disregard this testimony and conclude that the contract called for third-party invoices to be submitted purely on a pass-through basis.

[5] Jesco additionally asserts that Hakes's review was faulty in that he incorrectly struck through charges for certain items that were on-site and in use, as verified by CTS, an independent, on-site inspection company hired by Hess. The proper conclusion to be drawn from the evidence regarding these alleged discrepancies is not entirely clear. Hakes testified that he acknowledged and remedied a problem with one piece of equipment, "JD 270 Excavator." He also testified that his problem with Jesco's invoices had more to do with the equipment rates charged rather than whether certain pieces of equipment were actually being used.

Hajdik, meanwhile, testified that he largely deferred to Hakes to sort out the equipment invoices and suggested CTS may have made a mistake. He also suggested that although a mistake apparently was made in not paying for JD 270, the mistake was cancelled out because Hess paid for the use of a different excavator that was not used; the result being a "flip," according to Hajdik.

Furthermore, Jesco fails to demonstrate that, even if Hakes mistakenly struck through a

### 3. $40,000 for Fuel

Perhaps the most concerning of Hajdik's alleged admissions is a statement he made during cross-examination by Jesco's attorney, in which Hajdik suggested Hess might still owe about $40,000 to Jesco. The precise question and answer occurred as follows:

> Q      And you still have paid zero for labor; true?
>
> A      Well, what the—what we found is that in looking at those books, that we've overpaid equipment substantially. And this is company-owned equipment, such that if you just say, what is the total bill owed JESCO from Hess, it would turn out that we've overpaid labor to the extent—sorry—we've overpaid equipment, non-leased equipment, to the extent that we've actually covered the labor. So we've actually paid for labor and equipment.
>
> What I do realize, though, is that we left out fuel. Okay? So we still owe a small amount for fuel. About $40,000.[6]

Jesco contends that under the Texas Supreme Court's opinion in *City of Keller*, 168 S.W.3d 802, Hajdik's statement should be viewed as an admission of fact that conclusively proves Hess failed to pay at least $40,000 that it owed to Jesco. Hess, on the other hand, urges that Hajdik's statement was merely a charitable throw-away line. While this testimony certainly constitutes some

---

few of what appears to be voluminous charges, Hess failed to pay what it was obligated to pay Jesco under the contract, particularly in light of Hess's evidence of overbilling on the project and testimony from Hajdik that Hess overpaid on equipment to such an extent as to also "cover" the labor. As stated above, Jesco has the burden on appeal to demonstrate either that the evidence conclusively demonstrated that Hess failed to comply with the agreement or that the finding was so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 241-2 (legal sufficiency standards); *Ortiz*, 917 S.W.2d at 772 (factual sufficiency standards).

[6] Hajdik further suggested that amounts Hess paid to Ferguson Construction to finish the pipeline project would offset the $40,000. In an alternative theory of the case, Hess contends that it did not owe Jesco anything because it was entitled to offset amounts paid to Ferguson against any amounts still due to Jesco. Because of our resolution of the issues in this appeal, we need not consider the merits of Hajdik's statements or Hess's alternate theory.

9

evidence supporting Jesco's position on whether Hess failed to comply with the agreement, we do not agree with Jesco that it is conclusive on the issue.

Contrary to Jesco's suggestion, Hajdik's statement does not reach the level of a conclusive admission on an undisputed fact as contemplated in *City of Keller*. In that case, the court explained that undisputed evidence may become conclusive when a party admits it is true. *City of Keller*, 168 S.W.3d at 815. The court further allowed, however, that "[i]t is impossible to define precisely when undisputed evidence becomes conclusive. . . . Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *Id*. at 815-16. Hajdik was neither a party to the lawsuit nor Hess's designated representative at trial.[7] He was, however, the Hess employee primarily responsible for the pipeline construction project. Regardless, it cannot be said either that it was undisputed Hess still owed money to Jesco—indeed, this was the central contested issue of a lengthy jury trial[8]—or that Hajdik's testimony as a whole supported the conclusion that Hess still owed Jesco.

In other parts of his testimony, Hajdik stated that Hess "overpaid" Jesco overall, Hess overpaid so much on equipment that it had "covered" labor costs as well, and Hess paid Jesco what was owed. Moreover, Jesco has not, at trial or on appeal, attempted to argue or prove that Hajdik's statement regarding Hess still owing for fuel was correct. Jesco, in fact, makes no specific argument that a fuel charge went unpaid. Instead, Jesco has focused on attempting to prove that Hess still owed Jesco for labor and equipment, charges that Hajdik insisted Hess had

---

[7] Jesco originally named Hajdik as a party, but all claims against him were dismissed with prejudice by the trial court in granting a motion for partial summary judgment prior to trial. Jesco does not challenge this ruling on appeal.

[8] As discussed in more depth below, the record contains significant evidence suggesting Jesco overcharged Hess and that the parties never were able to reach an agreement regarding how to determine Jesco's actual costs.

paid in full.[9]  Accordingly, Jesco's assertion that, under *City of Keller*, Hajdik's isolated comment regarding fuel constituted an admission conclusively establishing Hess failed to pay $40,000 is without merit.[10]

---

[9] Jesco suggests that Hajdik's statements that Hess had paid in full were based on his belief that Hess was entitled to offset the amount it paid to Ferguson Construction to complete the pipeline project from any amounts it might have owed to Jesco.  While this is a possible interpretation for some of Hajdik's testimony, it is far from conclusive that all of his statements were premised on such offsets.  For example, at one point in his testimony not expressly related to Ferguson, Hajdik states: "Now that we've gone and reviewed the financials of JESCO, what we have found is that we overpaid equipment to the extent that, if you take into account all that we've paid to date . . . we've essentially paid for equipment and labor for the period from April 17 through the end of June."  Jesco stopped working on the project around June 26.

[10] In its reply brief, Jesco argues that Hajdik's statement that Hess still owed Jesco for fuel was a "binding admission," citing *Scharer v. John's Cars, Inc.*, 776 S.W.2d 228, 232 (Tex. App.—El Paso 1989, pet. denied).  *Scharer*, however, is readily distinguishable from the present case.  In *Scharer*, the party defendant acknowledged in his trial testimony that he owed the plaintiff a specific amount for the very reason claimed by the plaintiff (restoration work performed on a vehicle).  *Id.*  No testimony by the defendant inconsistent with that admission is referenced in the opinion.  Here, Hajdik was not a party to the lawsuit, and Jesco cites no authority that an employer can be held to have made such a binding admission through the testimony of an employee.  Moreover, as discussed in the text above, Hajdik made several other statements contradictory to the statement regarding owing for fuel, and Jesco has not attempted to establish that there was an outstanding balance related to fuel.

Generally speaking, a party's testimonial declarations that are contrary to his or her position in a case are "quasi-admissions." *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).  Such statements are merely some evidence—the weight of which must be determined by the factfinder—and are not conclusive upon the party.  *Id.*  They are generally distinguishable from true judicial admissions, which are formal waivers of proof usually found in pleadings or stipulations.  *Id.*  However, a party's testimonial quasi-admission can be considered a judicial admission if: (1) the declaration was made during the course of a judicial proceeding; (2) it is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony; (3) it is deliberate, clear, and unequivocal; (4) the giving of conclusive effect to the declaration will be consistent with the public policy upon which the rule is based; and (5) the statement is not also destructive of the opposing party's theory of recovery. *Id.*  Again, Hajdik is not a party to this case, and even if his statement could be considered a declaration on behalf of Hess, given the other statements he made insisting Hess had paid Jesco all it was due, the statement regarding fuel was not sufficiently deliberate, clear, and unequivocal to constitute a judicial admission.  *See, e.g., Hickman v. Dudensing*, No. 01-06-00458-CV, 2007 WL 1500334, at *3-4 (Tex. App.—Houston [1st Dist.] May 24, 2007, pet. denied) (mem. op.) (holding isolated statements from trial testimony were not deliberate, clear, and unequivocal in light of entirety of testimony); *Drake v. Spriggs*, No. 13-03-429-CV, 2006 WL 3627716, at *3 (Tex. App.—Corpus Christi Dec. 14, 2006, no pet.) (mem. op.) (holding

## B. The Numbers

Jesco additionally alleges that the amounts Hess agrees it was required to pay exceed the amounts it actually paid; thus, according to Jesco, the evidence is legally and factually insufficient to support the jury's negative answer to Question 1. To compute the amounts owed for labor and equipment, Jesco points respectively to the testimony of Robert Hancock, a business-evaluation expert hired by Hess, and Sam Hakes, the local supervisor for Hess on the project who examined the equipment invoices. Hancock testified that based on his review, the proper number for Jesco's post-April 17 payroll on the project would be "about" $157,000. He further stated that multiplying this figure by 1.25 would approximate the total labor costs to Jesco, inclusive of overhead costs such as payroll taxes and Worker's Compensation insurance. This calculation results in a total of $196,250.[11] Hakes testified that, based on his review, the total cost to Jesco of equipment used on the project, exclusive of third-party rental equipment, was "about" $115,000. Both men, however, testified about the difficulties they encountered in deriving accurate figures for Jesco's costs, due at least in part to Jesco's alleged overbilling practices and refusal to substantiate its costs.[12] Jesco asserts that Hess owed it $52,467.63 for third-party invoices; however, Jesco does not point to any place in the record where anyone from Hess agreed that this was

---

party's statement during deposition that he had received funds to which he was not entitled was not clear and unequivocal in light of entirety of deposition testimony, since appellee made other statements defending his entitlement to funds).

[11] Hajdik testified that Hess determined that a 1.21 multiplier would accurately capture Jesco's labor overhead costs. Such a multiplier would have made Jesco's total labor costs $189,970 based on Hancock's estimate of total payroll. Hajdik further acknowledged that if the proper modifier were significantly higher, Hess might still owe Jesco for its labor costs.

[12] There was testimony that Jesco billed for certain employees' time when they were not actually working on the pipeline project, billed exaggerated amounts for equipment, padded third-party equipment invoices, increased their labor rates substantially before "discounting" them to account for profit margin, and failed to substantiate its charges.

12

an accurate figure for expenses for third-party equipment.[13]

For the amount paid, Jesco points to Plaintiff's Exhibit 243, which shows three payments to Jesco for third-party invoices (totaling $74,395.21) and one additional payment of $249,186.50. These payments total $323,581.71. When shown Exhibit 243 during his testimony, Hajdik stated that, to his knowledge, the four payments listed thereon were the only payments made by Hess to Jesco for work done after April 17.

Subtracting the amount allegedly paid by Hess for post-April 17 work ($323,581.71) from the amount Jesco contends Hess acknowledged was due for that work ($196,250 + $115,000 + $52,467.63 = $363,717.63) results in an alleged balance of $40,135.92. Jesco maintains that this calculation conclusively demonstrates Hess still owes Jesco at least this amount.[14] However, given the

---

[13] In support of the third-party invoice figure, Jesco cites Plaintiff's Exhibit 214 as well as two places in Hajdik's testimony. Exhibit 214 is a chart submitted by Hess in response to Jesco's interrogatory requests. It lists several invoices, amounts requested, amounts paid, and dates paid and notes various challenges to and problems with the amounts requested. The chart, states that a third-party invoice for $22,007 "was properly paid," and that Hess owed only $30,460.63 on another invoice. Those two figures total the $52,467.63 that Jesco says Hess agreed it owed on third-party invoices. There are also notations on the chart that "Hess overpaid $32,000" on one invoice and should not have paid another invoice that the chart reflects as having been paid. Although some of the numbers add up to the amounts Jesco states Hess agreed were due on third-party invoices, it is difficult to read Exhibit 214 as unequivocally confirming a certain total amount as being owed for costs post-April 17. In the testimony cited by Jesco, Hajdik states generally that, under the supplemental agreement, third-party invoices were to be submitted and paid on a pass-through basis. He further acknowledges payments for certain of those invoices.

[14] Jesco alternatively argues that the evidence conclusively demonstrated Hess owed it far more than $40,000. We find this alternative argument without merit both because Jesco's own discussion regarding the alleged $40,000 owed demonstrates the evidence does not conclusively support more than that and because the argument is based largely on the assumption that Hajdik agreed in a June 17, 2009 telephone call that Hess would pay a certain amount for equipment and later backed out of that agreement. As discussed above, Hajdik explained that although the parties reached agreement on a figure for equipment in that telephone call, the figure was subject to further examination of the invoices by Hakes, and when Hakes reviewed those invoices, he found substantial problems with them. We further note that the jury charge did not inquire

13

testimony by Hajdik, Hancock, and Hakes regarding the difficulties Hess encountered in deriving solid figures due to Jesco's alleged overbilling practices, the somewhat ambiguous evidence regarding the amounts due on third-party invoices, and the acknowledgment by Hancock and Hakes that the best they could do was to estimate the actual costs for Jesco, we cannot say that the evidence conclusively demonstrated Hess still owes Jesco under the agreement. The jury was entitled to take all of these factors into consideration in answering Question 1. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (discussing authority of jury to accept or reject lay and expert opinion testimony particularly on the issue of costs, stating "[i]t has long been the rule of this State that opinion testimony does not establish any material fact as a matter of law. Further, the judgments and inferences of experts or skilled witnesses, even when uncontroverted, are not conclusive on the jury or trier of fact, unless the subject is one for experts or skilled witnesses alone."); *see also City of Keller*, 168 S.W.3d at 820 (citing *McGalliard* for the proposition that "[e]ven uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone"); *Allseas USA, Inc. v. PS Fabricators, L.L.C.*, No. 13-11-00186-CV, 2012 WL 7849219, at *5-6 (Tex. App.—Corpus Christi December 28, 2012, no pet.) (mem. op.) (holding jury was free to disregard expert testimony and give party credit for certain costs the jury could have found to be adequately documented in the record). We find no merit in any of Jesco's legal sufficiency arguments.

## IV. Factual Sufficiency

Other than generally asserting that since the evidence conclusively demonstrated the opposite of the jury's finding, the finding must also have been against the great weight and preponderance of the evidence, Jesco does not make

regarding any alleged oral agreement subsequent to the supplemental agreement.

14

any arguments specifically in support of its factual-sufficiency challenge. For the same reasons discussed above regarding Jesco's legal sufficiency challenge, we cannot say that the jury's negative answer to Question 1 was against the great weight and preponderance of the evidence.

## V. Conclusion

Because Jesco has failed to show that the evidence at trial was legally or factually insufficient to support the verdict, we overrule Jesco's three issues.

We affirm the trial court's judgment.

/s/    Martha Hill Jamison
        Justice

Panel consists of Justices Frost, Christopher, and Jamison.