**In re DILLARD DEPARTMENT STORES, INC. and Grizelda Reeder.**

No. 08–04–00259–CV.

Court of Appeals of Texas, El Paso.

March 3, 2005.

Rehearing Overruled April 20, 2005.

Mike Milligan, El Paso, for real party in interest.

Robert A. Valadez, Shelton & Valadez, Nissa M. Sanders, Crofts & Callaway, P.C., San Antonio, for relators.

Gonzalo Garcia, El Paso, respondent pro se.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## OPINION

DAVID WELLINGTON CHEW, Justice.

In this original proceeding, Relators Dillard Department Stores, Inc. and Grizelda

Reeder (collectively "Dillard's") seek mandamus relief from an order denying their motion to compel arbitration of a defamation claim by former employee Andrea Martinez. Because Ms. Martinez's defamation claim did not fall within the scope of the arbitration agreement, the trial court did not abuse its discretion in refusing to compel arbitration. We therefore deny the requested writ of mandamus.

## FACTUAL AND PROCEDURAL BACKGROUND

Andrea Martinez began her employment with Dillard's in 1983. In November 2002, Ms. Martinez was terminated from her employment with the company. In November 2003, Ms. Martinez filed suit against Dillard's. In her original petition, she alleged that Grizelda Reeder, Dillard's district manager, told the Cielo Vista store manager that she had evidence that Ms. Martinez had been stealing merchandise through fraudulent use of gift cards. Ms. Martinez stated that she and the store manager were terminated based upon two other allegedly false accusations: (1) that she had violated Section 61.016 of the Texas Labor Code by paying her daughter for her services with gift cards; and (2) that she had violated a corporate policy or instruction by allowing a gift card to be credited to an employee's account. She also claimed that immediately after her termination, a rumor began among current and former employees of Dillard's that she had actually been terminated for theft, notwithstanding her innocence of that original charge. Ms. Martinez asserted a cause of action for defamation against Dillard's, Ms. Reeder, and two unnamed defendants.

Dillard's generally denied Ms. Martinez's claims and filed a motion to compel arbitration, stating that Ms. Martinez had signed a form, "AGREEMENT TO ARBITRATE CERTAIN CLAIMS," on August 25, 2000 and that her defamation claim was expressly covered in the Rules of Arbitration. Attached to the motion were Ms. Martinez's signed acknowledgment of receipt of the Agreement to Arbitrate and the Rules of Arbitration and a copy of the Rules of Arbitration, effective "9/17/02," purportedly governing in this case. In her response, Ms. Martinez denied that she agreed to arbitrate her claims as alleged in the Motion and denied that defamation claims were specifically included in any arbitration agreement she voluntarily or knowingly signed. She also denied that the agreement to arbitrate was supported by valid consideration and affirmatively asserted that Dillard's promise to arbitrate any disputes with her was illusory because it had the power to modify and amend the agreement without notice to her.

On April 28, 2004, the trial court conducted a hearing on Dillard's motion to compel. At the hearing, Ms. Martinez's counsel stipulated that she had entered into an agreement to arbitrate in 2000, but it was not the one initially submitted to the court, that is, the "new" Rules of Arbitration dated September 17, 2002.[1] On the day of the hearing, Dillard's filed a supplemental pleading in which it asserted for the first time that it was entitled to arbitration under the agreement in effect in 2000. However, at the hearing, Dillard's introduced into evidence an affidavit from Nanette Savage, the administrative assistance to Dillard's general counsel and records custodian, in which Ms. Savage attest-

---

1. The 2002 Rules of Arbitration expressly include: "Any common law claim, including but not limited to defamation, tortious interference, intentional infliction of emotional distress." While the 2000 Rules of Arbitration include: "Personal injuries arising from a termination, except those covered by workers' compensation."

ed that Exhibit "B," the 2002 Rules of Arbitration, were the arbitration rules that outlined "the arbitration process applicable to all employees of Dillards, Inc. and its affiliates, subsidiaries and limited liability partnerships in effect on the date of Ms. Martinez' termination." Ms. Martinez's counsel argued that Dillard's had judicially admitted, by its prior pleadings in which it had relied on the 2002 Rules, that it has a right to modify its arbitration agreement with Ms. Martinez, therefore the arbitration promise itself was illusory. Specifically, Ms. Martinez's counsel argued that the 2002 Rules of Arbitration, with its many obvious changes, showed that Dillard's retained the power to change the arbitration agreement unilaterally, arbitrarily without notice or agreement, which makes consideration for the original agreement to arbitrate illusory. In response, Dillard's argued that it was entitled to arbitration because Ms. Martinez admitted that she agreed to arbitration under the 2000 Rules of Arbitration, nothing in the document stated Dillard's could unilaterally amend the rules, and the factual allegations in her defamation suit fell within the scope of the 2000 Rules of Arbitration.

At the hearing, Dillard's called Cielo Vista Store Manager Paul Clauser to testify about the company's Rules of Arbitration. Mr. Clauser testified that in 2000, Dillard's implemented an arbitration policy for its associates. Mr. Clauser agreed that the 2002 Rules of Arbitration were not the arbitration rules Ms. Martinez agreed to; rather she had agreed to the 2000 Rules of Arbitration. Dillard's argued that Mr. Clauser's testimony showed that the 2002 Rules applied to employees who signed the agreement to arbitrate after those rules were amended, not to Ms. Martinez.

After the hearing, the trial court denied Dillard's Motion to Compel Arbitration and Supplemental Motion to Compel Arbitration. Dillard's now brings this original proceeding in mandamus.

## DISCUSSION

### Standard of Review

■ A writ of mandamus will issue if the trial court has clearly abused its discretion and there is no other adequate remedy of law. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992)(orig. proceeding). With respect to resolution of factual issues or matters within the trial court's discretion, we may not substitute our judgment for that of the trial court. *Id.* at 839–40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* at 840. We cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision of legal issues, our review is much less deferential. *Walker*, 827 S.W.2d at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id.*

■ Mandamus will not issue where there is a clear and adequate remedy at law, such as a normal appeal. *Walker*, 827 S.W.2d at 840. When the trial court erroneously denies a motion to arbitrate under the Federal Arbitration Act, mandamus is the appropriate remedy. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex. 1998)(orig. proceeding)(There is no adequate remedy by appeal for denial of the right to arbitrate, because the very purpose of arbitration is to avoid the time and expense of a trial and appeal); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272–73 (Tex.1992)(orig. proceeding). Here, Dillard's introduced evidence that Dillard's is a full line retail department

store headquartered in Little Rock, Arkansas. The company maintains operations throughout Texas and in twenty-eight other states. In the course of its business operations, it conducts business activities across state lines and is involved in numerous transactions involving interstate commerce. An employment relationship involving commerce, which encompasses contracts relating to interstate commerce, is a sufficient transaction to fall within the Federal Arbitration Act. *In re Anaheim Angels Baseball Club, Inc.,* 993 S.W.2d 875, 877–78 (Tex.App.-El Paso 1999, orig. proceeding). It is undisputed that the FAA applies to agreement to arbitrate at issue.

### Agreement to Arbitrate

■ A party seeking to compel arbitration must establish the existence of an arbitration agreement and show that the claims raised fall within the scope of that agreement. *See Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996)(orig. proceeding). There is a strong presumption in favor of arbitration once the party seeking to compel arbitration proves that a valid arbitration agreement exists. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex.2003); *Prudential Secs., Inc. v. Marshall,* 909 S.W.2d 896, 898–99 (Tex.1995)(orig. proceeding). The trial court's determination of the arbitration agreement's validity is a legal question subject to *de novo* review. *Webster,* 128 S.W.3d at 227.

Dillard's argues that the parties' agreement to arbitrate was valid and supported by consideration. The 2000 Rules of Arbitration state that: "The Company and the Associate agree that the procedures provided in these Rules will be the sole method used to resolve any covered dispute arising between them." The Rules also state that "[i]n all cases, the decision of the arbitrator is final and binding...." Although Dillard's attached the 2002 Rules of Arbitration as the governing arbitration agreement between the parties in its initial pleading, it later filed additional pleadings seeking to compel arbitration under the 2000 Rules of Arbitration. At the hearing, Dillard's counsel agreed that the 2002 Rules did not apply to Ms. Martinez.

Ms. Martinez does not dispute that she agreed to be subject to the Rules of Arbitration that were in effect in August 25, 2000. Rather, she argues that the consideration element for the 2000 arbitration agreement was illusory, which renders that agreement unenforceable. Ms. Martinez acknowledges in her brief that there is no language in the 2000 Rules of Arbitration that expressly states that Dillard's retained a right to modify or rescind the arbitration agreement. Instead, she contends that "Dillard's has indisputably behaved as if it had that power by creating new rules, much more favorable to itself than the old, and requesting that the Court compel arbitration pursuant to the new rules as modified." Ms. Martinez argues that despite the absence of an express reservation right in the Rules, Dillard's in fact retained the power of modification or rescission without any notice to affected employees. In so arguing, Ms. Martinez also asserts that Dillard's judicially admitted that it retained the right to modify the rules by attaching the 2002 Rules of Arbitration to its motion to compel and arguing in its initial pleadings that it was entitled to proceed under those rules.

■ If an employer retains the unilateral right to modify an arbitration plan, the consideration for the arbitration agreement is illusory. *Webster,* 128 S.W.3d at 230 n. 2; *but see In re Halliburton Co.,* 80 S.W.3d 566, 569–70 (Tex.2002)(arbitration agreement containing employer's right to

modify or terminate the arbitration program was supported by sufficient consideration where express contract provisions provided for employee notification of changes and prospective application of any amendments). We apply standard contract principles to determine whether a valid arbitration agreement exists. *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 208–09 (Tex.App.-El Paso 2004, orig. proceeding), *citing Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir.2003); *see also Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983)(primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument). Here, there is neither an express nor implicit provision in the arbitration agreement indicating that Dillard's retained any unilateral right to modify the parties' agreement. It is clear that Dillard's did, in fact, modify its arbitration agreement since the parties presented two different versions of the Rules of Arbitration. Mr. Clauser's testimony indicates that Dillard's provided no notice of the modified plan to its existing employees, including Ms. Martinez. Mr. Clauser also offered somewhat vague testimony as to whether the modified plan would apply to Dillard's existing employees.[2] However, Dillard's represented to the trial court that it sought to compel arbitration under the Rules of Arbitration that Ms. Martinez had agreed to in August 2000, not the 2002 Rules of Arbitration it originally had pled was the governing agreement.[3]

■■■■■■ At the hearing, Ms. Martinez's counsel argued that by its pleadings, Dillard's had judicially admitted that it has the right to modify or amend its arbitration agreement with Ms. Martinez, without notice or consent. A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue and bars the admitting party from disputing it. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex.App.-Fort Worth 2001, no pet.). As long as the statement stands unretracted, it must be taken as true; it is binding on the declarant and he cannot introduce evidence to contradict it. *Id.* The elements required for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is deliberate, clear, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Id.* at 641–42. Counsel's statements on behalf of a client may serve as judicial admissions. *Id.* at 641. However, statements made by a party or his counsel in the course of judicial proceedings which are not based on personal knowledge or are made by mistake or based upon a mistaken belief of the facts are not considered judicial admissions. *DeWoody v. Rippley*, 951 S.W.2d 935, 946 (Tex.App.-Fort Worth 1997, writ dism'd by agr.).

2. The following exchange is the extent of Mr. Clauser's testimony concerning the applicability of the modified plan to existing employees:

> Q. Now, when Dillard's made those changes in the 9/17/02 agreement, what announcement did they make of what they were doing, or what notice did they give, or what agreement did they obtain?
>
> A. As far as I know, there were none. They were just going forward.

3. Even if Dillard's had in fact modified the 2000 arbitration agreement it had entered with Ms. Martinez, without notice or her consent, and had attempted to enforce the modified agreement, there is nothing in the agreement that provides for unilateral modification. Under such circumstances, Dillard's would have been doing what it had no contractual right to do, and thus be in breach of the original agreement.

We agree with Dillard's that its initial reference to the 2002 Rules in its motion to compel pleading does not constitute a judicial admission that Dillard's reserved the right to amend the rules or that the 2002 Rules of Arbitration applied to Ms. Martinez. In its initial pleading, Dillard's did not make a deliberate, clear, and unequivocal statement that it reserved the right to modify or otherwise amend the parties' arbitration agreement of 2000. Further, Dillard's later filed a supplemental motion that asserted its right to arbitration under the 2000 agreement and during the hearing on the matter Dillard's represented to the court that it now sought arbitration under the 2000 Rules of Arbitration. We conclude that Dillard's established that the parties' entered into a valid written agreement to arbitrate certain claims under the 2000 Rules of Arbitration.

### Scope of the Arbitration Agreement

■ To determine whether a claim falls within the scope of an arbitration agreement, we focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *Prudential Secs. Inc.*, 909 S.W.2d at 900. If the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W.3d 494, 498 (Tex.App.-San Antonio 2000, orig. proceeding). However, if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration. *Id.* Under the Federal Arbitration Act, any doubts as to whether a claim falls within the scope of the agreement must be resolved in favor of arbitration. *Prudential Secs. Inc.*, 909 S.W.2d at 899. "[A] court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Secs., Inc.*, 909 S.W.2d at 899, *quoting Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir.1990).

Here, the 2000 Rules of Arbitration provided that Arbitration applies to the following claims over the reasons leading to separation and, in addition, once a loss of employment occurs, and only in that circumstance, it also applies to the following claims, timely made, which could have arisen out of the associate's employment:

. . .

Violations of any other federal, state, county, municipal or other governmental, constitution, statute, ordinance, regulation, public policy or common law, affecting economic terms of employment.

Personal injuries arising from a termination, except those covered by workers' compensation.

Dillard's argues that Ms. Martinez's defamation claim falls within the scope of arbitrable claims, specifically for personal injury claims arising from a termination and for violations of common law affecting the economic terms of employment. With respect to the nature of Ms. Martinez's claim, Dillard's asserts that the tort of defamation falls within the scope of arbitrable claims because Ms. Martinez alleged she suffered actual damages for "[s]hame and humiliation, emotional distress, and other psychological damages," "[i]njury to her reputation," and "[l]oss of earnings and earning capacity...." However, merely pointing to the relief sought does not resolve the matter of whether the parties intended for defamation claims to be covered under the terms "[p]ersonal inju-

ries arising from a termination...." Following oral argument and at the Court's direction, the parties submitted letter briefs on relevant Texas case law on defamation as a form of personal injury. In so doing, Dillard's has directed our attention to several cases, which support classification of a defamation claim as a personal injury. *See Brewster et al. v. Baker et al.*, 139 S.W.2d 643, 645 (Tex.Civ.App.-Beaumont 1940, no writ)("Damage to character as the result of slander or libel is a personal injury."); *International & G.N. Ry. Co. v. Edmundson*, 185 S.W. 402, 405 (Tex.Civ. App.-San Antonio 1916), *rev'd on other grounds by* 222 S.W. 181 (Tex.Com.App. May 26, 1920)("Injury to character or good name is a personal injury."); *Houston Printing Co. v. Dement et al.*, 18 Tex.Civ. App. 30, 33–34, 44 S.W. 558, 560 (Tex.Civ. App. Jan. 27, 1898, writ refused)("[I]njuries to the reputation and to the health have ever been classed and treated by law writers as personal injuries.... Injuries which affect the personal security are injuries against the life, the limb, the body, the health, or the reputation of the individual."); *see also McNeill v. Tarumianz*, 138 F.Supp. 713, 716 (D.C.Del.1956)(The generally accepted concept of a "personal injury" includes injuries to the reputation.). We agree that prior courts have broadly construed the term "personal injury" in various statutes to include defamation, and thus have not limited the term to bodily injury as it is commonly understood in modern parlance. However, in examining the term "[p]ersonal injuries arising from a termination, except those covered by workers' compensation," in the context of the whole instrument, it is clear that the parties' intent was to cover bodily injuries other than those included in workers' compensation coverage.

In addition, we find that the defamation claim does not fall within the scope of arbitrable claims as a violation of common law "affecting economic terms of employment," as nothing asserted in the defamation claim touched on issues generally regarded as economic terms of employment, such as wage levels, overtime pay, and so forth. Since Ms. Martinez's defamation claim did not fall within the scope of the 2000 Rules of Arbitration, we cannot conclude that the trial court abused its discretion by denying the motion to compel arbitration.

For the reasons stated herein, the petition for writ of mandamus is denied.

LARSEN, J., Not Participating.