# NO. 12-22-00076-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HONOR CRUZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ANTHONY BRADLEY CRUZ, DECEASED, ANTHONY COREY CRUZ, CAROLINE CRUZ, ANATOLIO BENEDICTO* | § | *APPEAL FROM THE 241ST* |
| *CRUZ, JR. AND ROSALINA SEDILLO CRUZ,* *APPELLANTS* | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *MOR-CON, INC.,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Honor Cruz, Individually and as Personal Representative of the Estate of Anthony Bradley Cruz (Tony), Deceased, Anthony Corey Cruz, Caroline Cruz, Anatolio Benedicto Cruz, Jr. and Rosalina Sedillo Cruz (collectively "Cruz"), appeal the take-nothing judgment rendered against them after a jury trial in their wrongful death suit against Mor-Con, Inc. In challenging the factual sufficiency of the evidence, Cruz contends in a single issue that the evidence to support the judgment is against the great weight and preponderance of the evidence and is clearly wrong and unjust, and consequently requests that we remand for a new trial. We affirm.

## BACKGROUND

On December 15, 2018, Tony and Honor, prominent local fitness instructors, completed a workout they led at the gym where they worked. They planned to meet with friends for a late lunch that afternoon. As Honor prepared for the lunch meeting, Tony took his motorcycle for a ride.

As Tony rode his motorcycle down Greenbriar Road in Smith County, Texas, he collided with a tree that fell across the road. The tree slammed into his face and chest and threw him off his motorcycle to the pavement. According to investigating Department of Public Safety (DPS) Trooper Kevin Lybrand, it was unclear whether the tree fell and struck Tony directly off the motorcycle, or whether the tree fell just in front of him, leaving him with insufficient time to react and avoid the collision. Tony landed approximately forty-six feet south of the tree in the middle of the roadway, and his motorcycle continued down the road for approximately 100 yards and into the woods. A first responder arrived and began life saving efforts such as cardiopulmonary resuscitation (CPR). Another first responder, Darren Rozell, used his chainsaw to cut portions of the fallen tree and remove them from the road, so that the ambulance could access Tony and transport him to the hospital. Tony did not survive the collision.

The day and week prior to the collision, Mor-Con was in the process of installing a ten-inch underground waterline along Greenbriar Road.[1] The installation process involved a combination of trenching and boring. Trenching involves using a trackhoe to dig an open trench by removing dirt to one side, laying the pipe, and subsequently covering the trench after completing the installation. Luke Moore was the project superintendent and large trackhoe operator for Mor-Con, while Martin Mata operated the smaller trackhoe, and Feleciano Sanchez joined the pipe segments while in the trench. The crew also used a boring machine, which stays on the surface, bores holes under the surface soil without disturbing the topsoil, digs an underground tunnel, and Mor-Con uses its equipment to pull the pipe through the tunnel.

Cruz filed this wrongful death suit. Cruz alleged that Mor-Con was negligent in the following respects: (1) failing to train its employees to protect passing motorists; (2) failing to identify the tree and assess its risk before installing the waterline; (3) striking the tree with a trackhoe, making it susceptible to fall across the road; (4) boring a tunnel within the tree's protection zone, thereby destabilizing the tree; (5) disturbing the soil around the tree's roots, undercutting its stability; and (6) failing to inspect its work area and take corrective action.

---

[1] Southern Utilities Company contracted with Mor-Con to complete the installation of the pipe. KSA Engineers, Inc. was the engineering firm to design the project, and Jeremy Orr was the KSA project manager. KSA drew up the plans for the water line, which included instructing Mor-Con where to lay the pipe—about ten feet from the fence line. They were all initially defendants in the wrongful death suit ultimately filed by Cruz, but Cruz settled the claims against Southern Utilities, and nonsuited with prejudice the claims against KSA and Orr after settling with them.

The matter proceeded to a jury trial, who ultimately found in a 10-2 verdict that Cruz failed to meet her burden of proof to show by a preponderance of evidence that Mor-Con's negligence, if any, proximately caused the injury in question. Accordingly, the trial court signed a take-nothing judgment. Cruz filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**FACTUAL SUFFICIENCY OF THE EVIDENCE**

In one issue, Cruz argues that the evidence is factually insufficient to support the jury's finding of "No" in response to the court's charge asking: "Did the negligence, if any, of [Mor-Con] proximately cause the injury in question?"

## Standard of Review

When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must establish that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). In making that determination, we consider and weigh all the evidence, not just the evidence that supports the verdict. *Id.* We can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

When reviewing factual sufficiency issues, we are mindful that the factfinder is the sole judge of the credibility of the witnesses. *See Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 557 (Tex. App.—Tyler 2007, pet. denied) (op. on reh'g). Accordingly, we may not pass on the witnesses' credibility. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Furthermore, we may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

The burden of proof may be satisfied by direct or circumstantial evidence. *See Havner v. E–Z Mart Stores, Inc.*, 825 S.W.2d 456, 459 (Tex. 1992). But the plaintiff's evidence must be more than "mere conjecture, guess, or speculation." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Where circumstances give rise to more than one inference,

none more probable than the other, those circumstances are the equivalent of no evidence. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003) (per curiam).

The Texas Supreme Court has explained that, except in some circumstances not applicable to this case, "a court of appeals must detail the evidence . . . and clearly state why the jury's finding is factually insufficient when *reversing* a jury verdict, *but need not do so when affirming a jury verdict*." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (emphasis in original) (citing *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006)). The purpose of this rule when reversing a jury verdict is to discourage the reviewing court from "merely substituting its judgment for that of the jury" and becoming the thirteenth juror. *Id.* As explained by the Court, we "walk a very fine line in conducting an appropriate factual sufficiency review." *Id.* "But when the reviewing court affirms the jury verdict, the risk that the court has usurped the role of the jury disappears." *Id.*

## Negligence and Proximate Causation

To establish negligence, the plaintiff must produce evidence that the defendant owed the plaintiff a legal duty, that duty was breached, and the breach proximately caused the plaintiff's damages. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001).

To establish breach of duty, the plaintiff must show that the defendant did something an ordinarily prudent person exercising ordinary care would not have done under those circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care. *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374, 385 (Tex. App.—Tyler 2009, pet. denied); *Douglas v. Aguilar*, 599 S.W.3d 105, 108 (Tex. App.—Houston [14th Dist.] 2020, no pet.). "The occurrence of an accident or a collision is not of itself evidence of negligence." *Smith v. Cent. Freight Lines, Inc.*, 774 S.W.2d 411, 412 (Tex. App.—Houston [14th Dist.] 1989, writ denied). The resolution of a defendant's possible breach of duty is a question of fact for the jury. *Aguirre v. Vasquez*, 225 S.W.3d 744, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Establishing causation in a personal injury case requires a plaintiff to "prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). Proximate cause is

comprised of cause in fact and foreseeability. ***Excel Corp. v. Apodaca***, 81 S.W.3d 817, 820 (Tex. 2002).

Cause in fact requires the act or omission to be a substantial factor in causing the injury "without which the harm would not have occurred." ***Doe***, 907 S.W.2d at 477. To be a substantial factor, the act or omission must have "such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility," instead of simply the "so-called 'philosophic sense,' which includes every one of the great number of events without which any happening would not have occurred." ***Union Pump Co. v. Allbritton***, 898 S.W.2d 773, 776 (Tex. 1995) (quoting Restatement (Second) of Torts § 431 cmt. a (1965)).

Foreseeability requires that the negligent actor anticipated, or should have anticipated, the danger his or her negligence creates. *See **Excel Corp.***, 81 S.W.3d at 820. The exact injury need not be foreseen, but instead, foreseeability is satisfied when the injury is of a general character that could reasonably be anticipated. *See **Lee Lewis Constr., Inc.***, 70 S.W.3d at 785. However, "[f]oreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." ***Bos v. Smith***, 556 S.W.3d 293, 303 (Tex. 2018). Foreseeability is not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence. *See id.*; *see also **Stanfield v. Neubaum***, 494 S.W.3d 90, 103 (Tex. 2016) ("[T]he foreseeability analysis requires looking at all the circumstances in existence at the time.") (internal quotation marks omitted). When a jury hears two or more causation theories, the jury is free to determine which to credit. ***Gunn v. McCoy***, 554 S.W.3d 645, 677 (Tex. 2018).

## Quasi-Admission Legal Principles

A "party's testimonial declarations which are contrary to his position are quasi-admissions." *See **Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.***, 606 S.W.2d 692, 694 (Tex. 1980); *see also **Phillips v. Phillips***, 296 S.W.3d 656, 668 (Tex. App.—El Paso 2009, pet. denied) (recognizing distinction between true judicial admissions, which are formal waivers of proof usually found in pleadings or stipulations of the parties, and quasi-admission, consisting of statements made by party or attorney during course of judicial proceeding). In general, quasi-

admissions are "merely some evidence, and they are not conclusive upon the admitter." *Mendoza*, 606 S.W.2d at 694. Instead, the weight to be given such admissions is decided by the trier of fact. *Id.*; *see* *Hennigan v. I.P. Petroleum Co., Inc.*, 858 S.W.2d 371, 372 (Tex. 1993) (explaining same distinction between true judicial admissions and quasi-admissions).

However, a quasi-admission will be treated as a judicial admission if: "(1) the declaration was made during the course of a judicial proceeding; (2) the statement is contrary to an essential fact embraced in the declarant's theory of recovery or defense; (3) the statement is deliberate, clear, and unequivocal; (4) giving conclusive effect to the declaration will be consistent with public policy; and (5) the statement is not destructive of the opposing party's theory of recovery." *Phillips*, 296 S.W.3d at 668; *see also* *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d 370, 376 (Tex. App.—El Paso 2005, no pet.), *subsequent mandamus proceeding*, 186 S.W.3d 514 (Tex. 2006).

Importantly, if it appears that a party's statement was not deliberate and was instead made as the result of a mistake it will not rise to the level of a judicial admission. *See* *Mendoza*, 606 S.W.2d at 695 (concluding that party's opinion testimony was not so clear and unequivocal as to constitute a judicial admission where the "possibility of a mistake has not been eliminated."); *U.S. Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 228-30 (Tex. App.—San Antonio 1951, writ ref'd) (court declined to categorize testimony as a judicial admission where the "hypothesis of mistake was not eliminated."); *In re Dillard Dep't Stores, Inc.*, 181 S.W.3d at 376 (statements made by a party or counsel in the course of judicial proceedings, which are not based on personal knowledge or are made by mistake or based upon a mistaken belief of the facts are not considered judicial admissions).

In addition to requiring a clear and deliberate statement, "it is important to consider whether the statement relates to facts peculiarly within the declarant's own knowledge or is simply his impression of a transaction or an event as a participant or an observer." *TeleResource Corp. v. Accor N. Am., Inc.*, 427 S.W.3d 511, 526 (Tex. App.—Fort Worth 2014, pet. denied). This is because "[i]f a party's testimony consists only of a narrative of events in which he participated or which he observed, there is an obvious possibility that he may be mistaken like any other witness." *Id.* It is the nature of a judicial admission that it intentionally be an act of waiver, and not merely a statement of assertion or concession, made for some independent purpose. *Bliss & Glennon Inc. v. Ashley*, 420 S.W.3d 379, 393 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Finally, statements made in response to confusing or poorly worded questions may not be considered judicial admissions. *See Hennigan*, 858 S.W.2d at 372 (concluding that party did not make a judicial admission in her deposition testimony, where she claimed she was confused in responding to deposition questions); *Villarreal v. Guerra*, 446 S.W.3d 404, 412 (Tex. App.—San Antonio 2014, pet. denied) (party's statements at trial did not qualify as judicial admissions where they were not deliberate, clear, and unequivocal, and were made in part in response to questions that were "poorly-phrased and confusing").

**Scope of the Appeal**

Mor-Con does not dispute that it owed Tony a legal duty as a contractor working alongside a public roadway to protect motorists from hazards arising from its work. Mor-Con also acknowledges that it has various duties imposed by its contract with Southern Utilities, including overall responsibility for construction at the jobsite, to provide qualified personnel to do the work, to protect property adjacent to the jobsite including trees, and to implement safety precautions and programs in connection with its work. Moreover, because the jury did not find that any negligence of Mor-Con was a proximate cause of the injury, the jury did not answer any damages questions. Accordingly, this appeal concerns the elements of whether Mor-Con breached any legal duty to Tony and whether such breach was a proximate cause of Tony's injuries that resulted in his death.

**Credibility of the Witnesses and Admissions of the Mor-Con Employees**

The overarching theme of Cruz's argument on appeal is that Mor-Con's employees Luke Moore, Martin Mata, and Feleciano Sanchez judicially admitted, either through their testimony at trial or in their deposition testimony, that Mor-Con was negligent on each of Cruz's theories which proximately caused the injury in question.[2] As part of this argument, Cruz points to numerous instances in their testimony where Cruz's counsel impeached the witnesses with their deposition testimony to establish, for instance, that Mor-Con's employees (1) struck the tree with their heavy equipment, (2) bored within the tree protection zone, (3) disturbed the soil and roots in the area of the tree, (4) failed to inspect the area for damage caused by its machinery, (5) failed to train its employees in working around trees, and (6) failed to have a safety expert and/or arborist assess the worksite for dangerous conditions such as the tree that ultimately struck Tony.

At the outset, we note that many of the "admissions" relied upon by Cruz are not "admissions" at all. First, much of the testimony on which Cruz relies to assert some admission

---

[2] Moore, Mata, and Sanchez were each called by the Cruz family during their case-in-chief.

7

of negligence is in the form of hypotheticals and answers, rather than admissions of Mor-Con's negligence in this particular case. Second, Cruz's counsel also attempted to obtain the witnesses' concession or admission that something was "conclusive." On many occasions, however, the witnesses answered with "it could" or "possibly," "that's what he said," or "you say," rather than admitting the claimed fact. Third, Cruz's counsel frequently asked questions about what Mor-Con witnesses "now know" they should have done—that is, relying on hindsight. The negligence definition, however, inquired whether Mor-Con acted as a company of ordinary prudence under the same or similar circumstances—in other words, based on what Mor-Con employees knew at the time. Thus, any claimed "admissions" based on this type of hindsight testimony were not conclusive as to breach of duty or proximate causation.

With respect to the remaining statements, it is true that, when viewed in isolation, some of these appear at first blush to be deliberate, clear, and unequivocal admissions. While some of these individual statements appear to be conclusive, when considered in their context in a neutral light throughout the entire record, the admissions can as a whole best be characterized as quasi-admissions. For example, at times, under intense questioning, Moore agreed that Mor-Con did some things "wrong," such as failure to inspect the tree, failure to train employees regarding trees, possibly striking the tree, and failing to remove it or secure it knowing now that the falling tree resulted in Tony's death.

However, Moore testified at other times and on cross-examination to his explanations about these alleged wrongs and to his reasons why he did not believe at any time that Mor-Con's actions caused a dangerous condition or that it did anything wrong. For instance, Moore repeatedly and clearly testified that he did not believe they struck the tree, they did not trench or bore within the tree protection zone, their tracks on the trackhoes did not disturb the tree, he did not think at the time an arborist or similar safety official was necessary, and although he did not walk the tree line each day to inspect each tree, he did in fact conduct a drive-by inspection of the tree line after completing each day's work. The same is true of Mata, who testified through an interpreter, and ultimately explained any differences in his testimony resulted from passage of time since the accident. Sanchez overall testified similarly to Moore and Mata.

Admissions that might appear to be judicial admissions must be read, not in isolation, but in context of the witness's entire testimony, which could render the admission a mere quasi-admission that provides some evidence to support the fact associated with the admission, the

credibility and weight of which is for the jury to resolve. *See* ***Roberts v. Staples***, 644 S.W.3d 738, 744 (Tex. App.—Texarkana 2022, no pet.) (holding defendant's "admission of fault, descriptions of how the accident occurred, and testimony about what he could have done differently, including putting the car in park after he came to a full stop, may be some evidence that what he did do constituted negligence, but it does not [conclusively] establish negligence . . . in light of his testimony that he hit the accelerator by accident"); ***Jesco Operating, L.P. v. Hess Corp.***, 402 S.W.3d 320, 327, n.10 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding statement that party still owed other party for fuel was not "binding admission," and was instead quasi-admission in light of "several other statements contradictory to the statement regarding owing for fuel"); ***Risinger v. Shuemaker***, 160 S.W.3d 84, 91 (Tex. App.—Tyler 2004, pet. denied) (upholding take-nothing judgment under factual sufficiency review based on quasi-admissions that defendant's vehicle collided with plaintiff's vehicle, where plaintiff claimed this admission established fault and negligence, but we were not free to disregard jury's no negligence finding even if we disagreed with it); ***Castro v. Castro***, No. 13-13-00186-CV, 2014 WL 3802613, at *9 (Tex. App.—Corpus Christi–Edinburg July 31, 2014, pet. dism'd) (mem. op.) (holding that jury verdict was not to be disturbed on factual sufficiency grounds even though testimony at trial was "highly contradictory," because to reverse would require court to sit as thirteenth juror); ***Hickman v. Dudensing***, No. 01-06-00458-CV, 2007 WL 1500334, at *1 (Tex. App.—Houston [1st Dist.] May 24, 2007, pet. denied) (mem. op.) (affirming take-nothing judgment in part because testimony of contractor and employees that appeared in isolation to be judicial admissions were simply quasi-admissions when taken in context of entire testimony).

Furthermore, conflicts between a witness's deposition testimony and trial testimony are generally credibility issues for the jury. *See, e.g.*, ***AccuBanc Mortg. Corp. v. Drummonds***, 938 S.W.2d 135, 142–43 (Tex. App.—Fort Worth 1996, writ denied) (holding that conflict in witness's deposition and testimony at trial did not conclusively negate claim, but instead was quasi-admission raising fact issue for jury to resolve); ***Drake v. Spriggs***, No. 13-03-429-CV, 2006 WL 3627716, at *3–4 (Tex. App.—Corpus Christi–Edinburg Dec. 14, 2006, no pet.) (mem. op.) (holding deposition testimony that appeared deliberate, clear, and unequivocal in isolation was mere quasi-admission for jury to resolve when considered in entire context of testimony); ***Jacobs v. Jones***, No. 05-99-01455-CV, 2000 WL 768777, at *2 (Tex. App.—Dallas June 15, 2000, no pet.) (op., not designated for publication) (holding that evidence was not factually insufficient to

support jury verdict even though "trial testimony was inconsistent with . . . deposition testimony, [because] it is the province of the jury to resolve such conflicts, determine the credibility of the witness, and the weight to be given their testimony"). Statements in a deposition are declarations against the interest of the witness, the witness may explain or contradict those statements at trial, and the statements' probative value simply creates a credibility issue for the jury's determination. *See Panola Cnty. Comm'rs Court v. Bagley*, 380 S.W.2d 878, 885 (Tex. App.—Texarkana 1964, writ ref'd n.r.e.). To hold otherwise, we would essentially be concluding that because Cruz impeached Moore, Martin, and Mata, that the jury could believe only their portions of their deposition transcripts used to impeach them at trial and/or isolated admissions during their trial testimony that favor Cruz's theory of the case, a holding we do not make.

In conclusion, our standard of review requires that we review the entire record in a neutral light. *See Dow Chem. Co.*, 46 S.W.3d at 242; *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). This includes reviewing the entirety of a witness's testimony to determine whether an admission rises to a judicial admission, or instead is simply a quasi-admission, the credibility and weight of which is for the jury to resolve. *See, e.g.*, *Roberts*, 644 S.W.3d at 744; *Risinger*, 160 S.W.3d at 91. The same holds true for conflicts in a witness's trial testimony and deposition testimony. *See, e.g.*, *AccuBanc Mortg. Corp.*, 938 S.W.2d at 142–43; *see Panola Cnty. Comm'rs Court*, 380 S.W.2d at 885. Although Cruz impeached the Mor-Con witnesses on several occasions, in light of the witnesses' testimony as a whole and the jury's role in resolving conflicting testimony, we cannot conclude that the verdict is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust on that basis alone.

**Other Evidence Supports the Jury Verdict**

In any event, other evidence in the record supports the jury's "no" response to the negligence liability question in the court's charge, and that the tree fell for reasons other than Mor-Con's employees' conduct.

For instance, the evidence showed that the subject tree was part of a chinaberry tree with three or four codominant trunks, "pretty tall," but "structurally weak," and after it fell, the tree stretched across the road. The portions of the tree that first responder Rozell cut were in his opinion, alive, and he stated the "roots [have] been compromised." But he did not preserve any portions of the tree because he was not concerned about preserving the tree segments at the time and was instead focused on creating access for the first responders' ambulance.

10

On the other hand, the DPS Trooper's crash report stated that, after the accident, the tree did not appear to be cut or uprooted, and the "tree was a part of two other trees and was extremely rotted." Numerous photos confirmed the subject tree broke off at the base above ground. Mor-Con's counsel argued to the jury that the photos also show rotted roots after the tree fell, but they were not visible at the time the crew performed the work, and Mor-Con could not have foreseen "that the tree had all those rotted roots." Mor-Con's counsel continued that the tree did not break off from the roots, but from the base above ground.

In an e-mail sent by Moore to KSA Engineers the Monday after the accident, he described the tree as dead and "rotten at the base." A fact sheet offered by Cruz from the U.S. Forest Service about chinaberry trees showed that such trees are susceptible to breakage above ground at the crotch due to poor collar formation, or the wood itself is weak and tends to break.

Cruz offered summaries of some deposition testimony of an arborist hired by Southern, Gregory David, who stated the tree had at least three inherent defects that increased the tree's susceptibility to falling. David also stated in a portion of his report admitted into evidence that the subject tree had three primary buttress roots, and that all three were dead and decaying before the accident.

In portions of a report by Micah Pace, an arborist hired by Mor-Con, Pace also stated the buttress roots were decayed. Pace also offered evidence that the area with the subject tree received nearly 3.5 inches of rain in the two weeks before the accident and experienced high winds prior to the accident.[3] Moore observed in his email that it rained for two days and stormed the night before the tree fell.

Moore, Mata, and Sanchez testified at trial that neither of the trackhoes hit the subject tree during their trenching and boring operations before the accident. The jury could have concluded the marks on the tree that struck Tony could have been from where he and/or his helmet struck the tree, resulted from the force of falling on the road, or from the trackhoe moving the wood out of the way two days after the collision. Cruz also points to the "fresh" gouge mark on the other standing portion of the chinaberry tree that subsequently fell after the accident, inferring that it could only have been caused by the heavy equipment used by Mor-Con's employees on this water

---

[3] Neither party presented any live testimony from either of the arborist experts during the trial. Instead, Cruz's counsel used short summaries of deposition testimony by these arborists to question the Mor-Con witnesses.

line installation job. However, Moore suggested that this mark could have resulted from the branch of the tree that broke off and hit Tony, thereby hitting the standing portion of the tree, and not a result of the trackhoe striking the tree. Additionally, Moore stated that even if that gouge had been caused by their trackhoe, he did not believe a reasonable inspection would have necessarily revealed the gouge, because the portion of the tree that fell was in front of that branch and would have hidden it from their view. Although Cruz's counsel was successful at times in obtaining what appeared to be admissions that the employees could have struck the tree, the overall tenor of the employees' testimony was that they did not believe that they struck the tree, and if it was stricken by heavy equipment, it was not caused by their work. Their credibility and the facts in this regard were for the jury to resolve, especially given the other evidence independent of Mor-Con's conduct from which the jury could conclude caused the tree to fall.

The witnesses also testified that their trenching and boring operations did not occur within three feet of the subject tree. Moore testified he was not sure they did work within the "tree protection zone" discussed by Pace. Moore explained that the tracks on their trackhoes do mark the ground and soil, but that they did not dig up the soil or the roots in the area around the tree. Moore testified that they bored "past" the tree, and the purpose of boring there rather than trenching is specifically to create less disruption and provide more stability to the topography of the ground. Moore admitted that disturbing the dirt can cut tree roots, but only for roots that are very shallow. Part of the purpose of the project was to install a fire hydrant. Moore explained that they bored "past" the subject tree, the "come-out" hole was approximately fifteen feet past the subject tree, the fire hydrant was about thirty feet south of the tree, and Moore and Mata operated their machinery closer to the fire hydrant than the subject tree. Accordingly, his testimony continued, the pair did not use the trackhoes near the tree when filling the trench. Sanchez stated that if they encounter large roots, they will try and find different ways to insert the pipe to refrain from disturbing the roots. Moore explained that any inconsistencies between his and Sanchez's testimony were the result of mistaken memory by Sanchez. Irrespective of this, the tree broke off at the base above the ground when it fell, not at the roots, which the jury could have reasonably inferred that any boring and trenching activity by Mor-Con played no role in how the tree fell.

With respect to lack of training, Moore explained that although they did not have specific training regarding trees, they always try to avoid them for obvious reasons. He testified that he personally trained Mata in the operation and use of the trackhoe equipment through on the job

training, and that he worked with Mata and Sanchez for twenty years. Mata detailed how he was trained to operate the machinery, such as conducting an initial assessment of the work area prior to operating the machinery for obstacles or potential dangers in all directions. This included avoiding trees. Mata added that he had the added incentive not to strike trees because doing so could damage the equipment, rendering it inoperable.

Finally, with respect to the allegation that Mor-Con failed to inspect the area, Moore testified that he conducted a "drive-by" of the jobsite when he left the site each day, including the day before the accident. He admitted that he did not walk along the tree line but stated that walking the tree line would have only placed him approximately ten feet closer to where he was when he drove by the jobsite. He further stated that he did not observe any gouges or marks in the trees, including the one that struck Tony, but explained that the portion of the tree that was still standing would have hidden any gouge marks. He also suggested that they did not hit the tree, and the gouge mark was made once the tree fell.

## Conclusion

In summary, the jury heard from Rozell that he believed the tree was alive, but it had documentary evidence from the investigating DPS Trooper that the tree "did not seem to be cut or uprooted" and was "extremely rotted." Moore, Mata, and Sanchez believed that they did not strike the tree, bore or trench in the tree protection zone, or disturb the soil to the point that it would cause the tree to fall, even though the jury also heard that Moore, Mata, and Sanchez changed their testimony in some respects. The parties presented evidence that the chinaberry tree is weak by nature, and that it broke off at the base above the ground. The jury could have concluded that the breakage occurred because of natural phenomena such as the heavy rains and wind prior to the accident in combination with the nature of chinaberry trees instead of the actions of Mor-Con. The jury could have also concluded that the inspection and training provided by Mor-Con was reasonable under the circumstances of what was known by Mor-Con's employees at the time of the alleged negligence, not in hindsight.

This case is precisely the purpose for which we have jury trials, so that the jury may judge the credibility of the witnesses and evidence, and resolve contested factual issues supported from the parties' conflicting views of the evidence. Indeed, as Cruz's counsel emphasized to the jury throughout the trial, the jury is powerful and its role as the factfinder is very important and at the heart of our system of resolving disputes. In the face of conflicting evidence, the jury fulfilled its

role. In light of this conflicting evidence in this tragic case, we do not disturb their resolution of the fact questions, and implicitly, the credibility determinations it resolved in favor of Mor-Con when it found that the evidence did not preponderate that Mor-Con's negligence, if any, proximately caused the injuries suffered by Cruz. Had the jury found for Cruz, such a verdict would be supported by the evidence, but it decided otherwise. We are not free to substitute our judgment for that of the jury. *See Ellis*, 971 S.W.2d at 407. Accordingly, when viewing the entire record in a neutral light, we hold here that the evidence is not so against the great weight and preponderance of the evidence to be clearly wrong or unjust. *See **Dow Chem. Co.***, 46 S.W.3d at 242; *see also **Cain***, 709 S.W.2d at 176.

Cruz's sole issue is overruled.

### DISPOSITION

Having ***overruled*** Cruz's sole issue, the trial court's take-nothing judgment is ***affirmed***.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered June 14, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 14, 2023**

**NO. 12-22-00076-CV**

**HONOR CRUZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ANTHONY BRADLEY CRUZ, DECEASED, ANTHONY COREY CRUZ, CAROLINE CRUZ, ANATOLIO BENEDICTO CRUZ, JR. AND ROSALINA SEDILLO CRUZ,**
Appellants
V.
**MOR-CON, INC.,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 19-1499-C)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against Appellants, **HONOR CRUZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ANTHONY BRADLEY CRUZ, DECEASED, ANTHONY COREY CRUZ, CAROLINE CRUZ, ANATOLIO BENEDICTO CRUZ, JR. AND ROSALINA SEDILLO CRUZ,** and that this decision be certified to the court below for observance.

James T. Worthen., Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*